A person indict-
ed for forging
"an order for
the payment of
money," is not
entitled to a pe-
remptory chal-
lenge, it being
an offence un-
der the statute,
punishable only
with imprison-
ment for a
term of years.
In all cases
where a right of
peremptory
challenge does
not exist, two or
more persons
may be indicted,
and tried jointly
or separately, in
the discretion of
the court. Whe-
ther two persons
indicted for a ca-
pital offence, and
entitled to a pe-
remptory chal-
lenge, can be
tried together
against their
consent ? *Quære.*
A check in the
name of *B.* on
the bank, was
passed by *C.* to
*D.* who received
the money, and
remitted it to *C.*
as his agent. The
check was, af-
terwards disco-
vered to be a
forgery, and the
bank got posses-
sion of the mo-
ney before it
reached the
hands of *C.* On
an indictment
for the forgery,
*B.* was held to
be a competent
witness to prove
the forgery, he

## The People *against* George Howell.

AT the last *general sessions of the peace*, held in the
city of *New-York*, *Howell*, the prisoner, who was now
brought up on a *habeas corpus*, was indicted with one
*James Mitchell*, for forgery. The indictment was for
forging " a certain order for the payment of money,"
and the check was set forth as follows : " *New-York*, 27th
*February*, 1809. Cashier of the Merchants' Bank, in the
city of *New-York*. Pay 4,095, or bearer, 685 dollars 20
cents. *Benjamin Butler*."

When the prisoners were brought up to be tried, the
counsel for *Howell* moved the court, that he should be
tried separate and apart from *Mitchell;* but the court re-
fused to grant the motion, and directed both prisoners to
be tried together, and they were tried accordingly. They
were both allowed peremptory challenges, and both chal-
lenged. On the trial, the following facts appeared in evi-
dence. On the 28th *February*, 1809, *John Guest*, a cabi-
net-maker, in the city of *New-York*, received a letter
from one *Abraham Cooper*, dated at *Brunswick*, (*New-
Jersey*,) and containing the check in question, pur-
porting to be drawn by *Benjamin Butler*, on the mer-
chants' bank, for which check *Guest* was directed to ob-
tain the money, and after retaining 35 dollars, the price
of a bureau, which was directed to be forwarded, to re-
mit the balance to *Cooper*, in a letter directed to the care
of one *De Graw*, an inn-keeper at *Brunswick*. On the next
day, *Guest* presented the check at the merchants' bank,
received the money, and after deducting the 35 dollars, as
requested, transmitted the residue according to the di-
rections of *Cooper*. The amount of the check was charg-
ed by the bank, who did not then suspect a forgery, to

having received a release from the bank ; and that he was not answerable to *C.* for the money,
even if the check were genuine, the bank having acted without his direction.
    In an action by *C.* against *B.* the consideration for which the check was given might be in-
quired into ; if it was given for a pre-existent debt, and the check proved bad, *B.* would be still
liable for the original debt. A promise without a consideration, even though it be in writing
is a *nudum pactum.*
    Whether, in every criminal case, a witness who is not interested in the event of the cause,
is not a competent witness ? *Quære.*

NEW-YORK,
May, 1809.

The People
v.
Howell.

*Butler*, the drawer, who kept a cash account with the bank.

On the 3d *March*, *De Graw* received a letter from *Cooper*, dated in *New-York*, requesting that the letter received by him (and which contained the money sent by *Guest*) might be forwarded to *New-York*, addressed to *Silas Fordham*, with which request *De Graw* immediately complied. During these transactions, *Butler* came to some explanation of his account with the bank, and declared the check in question to be a forgery. In consequence of this declaration, the bank immediately took measures to ascertain the fact of forgery, and to recover back the money which had been paid on the check ; and they succeeded in tracing the transaction, so as to seize, at the post-office, on the 4th *March*, the letter forwarded by *De Graw* to *Fordham*, and which contained the money. On the 7th *March*, the bank credited *Butler* the whole amount of the check, who received the same. The bank intended, at all events, to have credited *Butler* the amount of the check, as soon as they were fully satisfied that it was a forgery.(a)

At the trial, *Butler*, whose name had thus been forged, was offered as a witness, on the part of the people, in order to prove the forgery. He was objected to by the counsel for the prisoner ; but on producing a release from the bank, he was admitted. At the request of the prisoner's counsel, the point as to his admissibility was reserved for the decision of this court. The prisoner was convicted, and *Mitchell* acquitted.

*Griffin*, for the prisoner. 1. The prisoner, against his consent, was tried together with *Mitchell*. He ought, according to his request, to have been tried alone. It is a principle of justice, which our law is anxious to maintain, that every man who is accused, should have a fair and im-

(a) *Guest* and *De Graw* were innocent agents in this transaction, being the dupes of the artful contrivance of *Howell*. *Fordham* was a fictitious personage.

NEW-YORK,
May, 1809.

The People
v.
Howell.

partial trial; and the court cannot throw any impediment in the way of such a trial, to the prejudice of the accused. Now, if a prisoner is compelled to be tried with others, he may be greatly prejudiced by the circumstance. An innocent person, put upon his defence jointly with a great and notorious offender, may be materially injured from being placed in such a situation. Again, a prisoner indicted for a capital offence, is allowed to challenge peremptorily twenty of the jurors. The benefit of this privilege may be destroyed by his being tried with another, who may exercise the same right; for his associate may, perhaps, challenge the very men he would wish to be his triors.*

* See *King* v. *Philips* and *others.* 2 *Str.* 920.

2. *Butler* ought not to have been admitted as a witness. An interest in the question put to a witness may produce as strong a bias on his mind, as an interest in the event of the suit. It is a settled rule, that a person whose name is forged is not a competent witness to prove the forgery.†

† *Peak. L. of Ev.* 105. 107. 177.

*Butler*, it is true, had a release from the bank; but if there is any other person to whom he would be liable, if the check were genuine, his interest still remains. Now he was liable to *Cooper*; for if the check proved bad, *Cooper* might consider it as no payment, and resort to his original demand. Again, he might bring an action on the check against *Butler*, and if the latter should allege that the check had been paid by the bank, *Cooper* might answer, that the money had been stopped *in transitu*, by the bank, so that there had not been a real and effectual payment. The case of the *King* v. *Usher*,‡ may, perhaps, be cited; but that was very different from the present. The banker had not charged the person whose name was forged with the money, being satisfied of the forgery; and the question was only between the banking house and the man who was injured. Here is a third person who has received the check.

‡ 1 *Leach*, 57.

*Riker*, (district attorney, and *Sampson*, contra.

1. From the observations made by Mr. Justice *Buller*, in the case of *Young and others* v. *The King*, in error,§ there

§ 3 *Term Rep.* 106.

can be no doubt of the practice in *England* to try two or more prisoners together ; and *Buller* mentioned a case before him, where two persons were tried together for murder, where the evidence affected the prisoners differently, and that he summed up the cases separately to the jury, and took separate verdicts against each. *Foster** mentions the same practice. The prisoner, in the present case, was not enti-tled to a peremptory challenge ; for the act of the 18th *April,* 1808,† has altered the law of the 21st *March*,1801,‡ so that the forging of an *order* for the payment of money, is now punishable with imprisonment for a term of years only, and not for life. The objection, therefore, in regard to the right of peremptory challenge, must fail.

2. *Butler,* after his release, was a competent witness. In the case of Dr. *Dodd,* Lord *Chesterfield,* whose name was alleged to be forged, was admitted as a witness, on pro-ducing a release from the supposed obligee of the bond.§ A person whose name is forged may be a witness to prove the forgery, where he is not directly interested in the ques-tion.¶ After the check had been regularly paid at the bank, it was at an end, and *Butler* could never afterwards be made liable to *Cooper* on the check. The money was paid to *Guest,* the agent of *Cooper,* which was equivalent to a pay-ment to *Cooper* himself. The case of the *King* v. *Usher,* is a strong case to show, that *Butler,* after his release, was a competent witness.

*T. A. Emmet,* in reply, observed, that though in *En-gland,* prisoners may be compulsorily tried together, yet there were substantial reasons for a different practice in this state. In *England,* the sheriff is unlimited as to the num-ber of jurors to be returned on the panel. By the act of the 31st *March*,1801,** the sheriff is authorised to summon no more than 36 jurors. Should any deficiency of jurors exist, a *tales* must be awarded. If a man, against his con-sent, is put upon a trial with another, who peremptorily challenges, it is a most serious injury, for the very best and

NEW-YORK,
May, 1809.

The People
v.
Howell.

* *Rep.* 360.
Disc. 3. c. 2.

† 31 sess. c. 155
‡ 24 sess. c. 54

§ 1 *Leach*, 185.

¶ *Buller, N. P.*
289.

** 24 sess.
98. s. 9.

NEW-YORK,
May, 1809.

The People
v.
Howell.

most unexceptionable jurors for him, may thus be set aside. There may be challenges, *for cause,* as to one prisoner, which would not exist as to the other. The law is studious in the protection of the accused, and through the whole course of the trial he is benignly reminded of his privileges, that he may be on his guard. Again, *Howell* must have been led into a mistake, by the allowing a peremptory challenge to his associate, and the whole panel was thus deranged, so that the prisoner could not have a fair opportunity to exercise his right.

2. The check was not in fact paid, for though the money was paid at one moment, it was taken back at the next, and *Butler* could not, therefore, in an action against him by *Cooper,* allege that it was paid. His only defence would be, that it was a forgery. If the check was genuine, and the bank acted by the direction of *Butler,* then *Butler* would be equally liable to *Cooper,* for the money thus wrongfully taken. In any view of the case, therefore, *Butler* was interested in proving the check to be a forgery.

A question was raised, on the argument, whether, in case the court should be of opinion, that either of the objections was well founded, they would grant a new trial or discharge the prisoner. *Riker* insisted, that the court had the power to grant a new trial, and cited 2 *Str.* 968. 6 *Co.* 14. *Arundel's* case. 4 *Hawk. P. C.* 330. c. 36. s. 15. *People* v. *Townsend.* 1 *Johns. Cases,* 105. and the case of the *United States* v. *Fries,* (3 *Dallas,* 515.) which he said was a strong case to this point.

*Emmet* observed that, in *Arundel's* case, there was a fault in the *venire;* that he never heard of a new trial in a criminal case, and where it was not asked for. The prisoner, in the present case, does not wish for a new trial, nor does the public prosecutor apply for it. Where a person has once gone through a trial, and been put in jeopardy of his life, the court will never grant a new trial, unless *in favorem vitæ,* at the instance of the party.*

* *People* v. *Barret* and *Ward,* 2 *Caines,* 304. 1 *Johns. Rep.* 66.

KENT, Ch. J. delivered the opinion of the court. The
defendant was convicted at the last court of general sessions
of the peace in this city, for forging the check of *Benjamin
Butler*, purporting to have been drawn upon the *merchants'
bank*. The record has been removed into this court, and
the counsel for the prisoner have raised two objections to
the legality of the commitment.

1. That the prisoner was tried, against his consent, jointly
with one *Mitchell;* 2. That *Butler*, who was admitted as
a witness against him upon the trial, was incompetent, on
the ground of interest.

1. It appears by the indictment, that the prisoner was in-
dicted for forging an *order for the payment of money*. The
*check* is set forth, *in hæc verba*, in the indictment, but it is de-
nominated an order. The statute of 1808, made some al-
terations of the former law in respect to the punishment of
forgery. The forging of *deeds, promissory notes, and bills
of exchange*, is punishable with imprisonment for life, as
before ; but the forging of orders for the payment of money,
is now only to be punished with imprisonment for a term
of years. A check is not, either in common parlance, or
in the technical language of the books, called a bill of ex-
change or promissory note, though it may, in some respects,
have the same legal operation. The statute, in discrimina-
ting between bills and notes, and orders for the payment of
money, must be interpreted according to the usual and set-
tled understanding of those terms, and a check will there-
fore fall within the description of an order for the payment
of money. It has been so understood by the public prose-
cutor in this case, and if the question was otherwise doubt-
ful, the classification given to the paper in the indictment
ought to prevail over the other denomination of the in-
strument, as that would inevitably enhance the punishment.
Penal statutes ought to be read according to the ordinary
import of language, and if a term would equally admit of
two constructions, the one attended with the milder conse-
quences ought to be adopted. In this case, then, the pri-

soner was not entitled to his peremptory challenge, and consequently the force of the objection to his being tried jointly with *Mitchell*, is destroyed. In all cases, at least where the right of peremptory challenge does not exist, and two persons are indicted jointly, they may be tried jointly or separately at the discretion of the court. This is the settled practice, both here and in *England*, and no ob- jection to it exists sufficient to outweigh the public conve- nience of the rule.

2. The next objection is to the competency of *Butler* as a witness. The claim which the bank might have had against him was released, and the interest, if any, which *Butler* had in supporting the charge of forgery, is supposed to arise from his being liable to *Cooper*, the nominal payee of the check. The ancient rule in *England*, that a witness, whose name was forged, was incompetent to prove the forgery on an indictment, because he was interested in the question, still prevails in their courts, and it was adopted by this court in the year 1794. The grounds or reasons of that decision are not before the public, and we therefore do not know them. It is probable that the court assumed the *English* rule as they found it then existing. But since that time, the question of interest in a witness has been investi- gated and defined with more precision, both in *England* and in this state. The rule now, in all such cases, and I believe I may say in almost all criminal cases, except in the case of a forged instrument, is, that the witness is to be received, if he be not interested in the event of the suit, so that the verdict could be given in evidence in an action in which he was a party. The interest which the witness may have in the question put, is no longer the test. That degree of in- terest goes only to the credit of the witness. The exclu- sion of the witness, in the case of forgery, has therefore now become an anomaly in the law of evidence, for it is certain that the conviction of the party charged with forging a check, cannot be given in evidence in a subsequent civil suit on the check ; and as the reason of the old rule has

NEW-YORK,
May, 1809.

The People
v.
Howell.

ceased, by a sounder definition of the question of interest, and as it is not now applied to other criminal cases, it would seem to be fit and proper, that the rule itself should no longer be applied to the case of forgery. But the present case does not turn upon the validity of that rule, and there. fore the court do not now interfere with it. Assuming the rule to exist, according to the decision, in the case of *Hamil- ton*, in 1794, we are of opinion, that the interest of *Butler* was extinguished by the release from the bank. He was no longer answerable to *Cooper* upon the check, for that had been paid and satisfied by the bank. *Cooper*, by means of his agent, had received from the bank, the amount of the check, and had applied part of it to his private use, and transmitted the residue to this city, by means of the mail. The check was as much spent, as if it had slept for years afterwards on the files of the bank. It had complete- ly performed its object. The subsequent recovery of a part of the money by the bank did not revive and give effi- cacy to the check. *Cooper* had his remedy against the bank, if they had unduly taken money out of his possession, but it gave him no remedy against *Butler*, any more than if any third person had received that money wrongfully from the possession of *Cooper*. If the bank had acted as the agent of *Butler* in receiving the money, he would, then, per- haps, have been equally liable (supposing the check to have been genuine) as a tortfeasor, but there is no evidence in the case, that the bank acted under his directions. They acted voluntarily, and with the laudable design of detecting a fraud, and avoiding a loss. They were struggling to in- demnify themselves, and not for the service of *Butler*. But the objection appears to be susceptible of another and con- clusive answer. If *Cooper* was to sue *Butler*, the consider- ation for which the check was given would be a lawful ob- ject of inquiry. The consideration of any negotiable paper is examinable, as between the original parties to that paper, and from the facts in this case we must consider *Cooper* as the person who originally received the check from *Butler*,

supposing it to be good.    The check then was founded upon a previous good consideration, or it was not.    If there was a pre-existent debt for which it was given in payment, the debt would still exist against *Butler*, if the check was not good.    Unless a check be paid, it is no payment.    If, on the other hand, the check was voluntary, and given without consideration, *But'er* was not bound to pay it, for a promise without a consideration, is a *nude pact*, even though it be in writing.    In no light, then, in which the court have been able to view the question, does it appear, that *Butler* was incompetent, and, consequently, neither of the objections to the conviction of the prisoner appear to be well taken.

Judgment, that the prisoner be sent to the state-prison, to be kept at hard labour, for fourteen years.