THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EDWARD FISHER, ISIDORE HELFANT and HARRY DREITZER, Appellants.

420

(Argued October 25, 1928; decided December 4, 1928.)

*Marshall Snyder, Ralph K. Jacobs* and *Irving J. Seaver* for Edward Fisher, appellant. The trial court's refusal of a separate trial for defendant Fisher deprived him of due process of law, and of a fair and impartial trial. (*People* v. *Snyder*, 246 N. Y. 491; *People* v. *Doran*, 246 N. Y. 409; *People* v. *Sweetin*, 325 Ill. 245; *People* v. *Buckminster*, 274 Ill. 435; *Commonwealth* v. *James*, 99 Mass. 438; *White* v. *People*, 81 Ill. 333; *People* v. *Carmichael*, 314 Ill. 460; *Flamme* v. *State*, 171 Wis. 501.)

*Joseph A. Solovei, Joseph Shalleck* and *Henry G. Singer* for Isidore Helfant, appellant. The People failed to establish beyond a reasonable doubt that the alleged confession of Helfant was voluntary. (*People* v. *Doran*, 246 N. Y. 437; *People* v. *Pantano*, 239 N. Y. 419; *People* v. *Taranto*, 217 N. Y. 199.) The denial of the motion for a separate trial was an abuse of discretion and prevented the jury from properly weighing the testimony produced upon the various issues raised at the trial. (*People* v. *Doran*, 246 N. Y. 409; *People* v. *Snyder*, 246 N. Y. 494; *People* v. *Sweetin*, 325 Ill. 245; *Commonwealth* v. *James*, 99 Mass. 438; *People* v. *Buckminster*, 274 Ill. 435; *White* v. *People*, 81 Ill. 333; *Roche & Emanuel* v. *State*, 5 Coldw. [45 Tenn.] 39; *Morrow* v. *State*, 82 Tenn. [14 Lea] 475; *State* v. *Bessa*, 38 So. Rep. 985; *State* v. *Frazee*, 152 Pac. Rep. 462; *Flamme* v. *State*, 171 Wis. 501; *People* v. *Car-*

*michael*, 311 Ill. 460; *People* v. *Rupert*, 146 N. E. Rep. 456.)

*George Gordon Battle* and *Harvey J. Bresler* for Harry Dreitzer, appellant. A joint trial was prejudicial to defendant Dreitzer and deprived him of a fair and impartial review by the jury of the competent evidence against him. (*People* v. *Snyder*, 246 N. Y. 491; *People* v. *Doran*, 246 N. Y. 409; *People* v. *Sweetin*, 325 Ill. 245; *People* v. *Buckminster*, 274 Ill. 435; *White* v. *People*, 81 Ill. 333; *People* v. *Rupert*, 316 Ill. 39; *People* v. *Young*, 316 Ill. 508; *People* v. *Carmichael*, 314 Ill. 460; *Commonwealth* v. *James*, 99 Mass. 438; *Flamme* v. *State*, 171 Wis. 501.) The weight of evidence was contrary to the verdict of the jury who did not resolve the benefit of a reasonable doubt in favor of the appellant Dreitzer. (*People* v. *Cassidy*, 160 App. Div. 641; *People* v. *Kennedy*, 159 N. Y. 346.)

*Charles J. Dodd*, District Attorney (*Henry J. Walsh* of counsel), for respondent. The appellant Fisher's guilt was proved beyond a reasonable doubt. The trial court properly denied his application for a separate trial. (*People* v. *Seppi*, 221 N. Y. 62; *People* v. *Trybus*, 219 N. Y. 18; *People* v. *Jackson*, 182 N. Y. 66; *People* v. *Doran*, 246 N. Y. 409.) The appellant Helfant's guilt was proved beyond a reasonable doubt. His confession was not obtained illegally. The trial court properly denied his application for a separate trial. (*People* v. *Meyer*, 162 N. Y. 357; *People* v. *Doran*, 246 N. Y. 409; *People* v. *Wiener*, 248 N. Y. 119.) The appellant Helfant was accorded a fair and impartial trial. The trial was free from error. (*People* v. *Braun*, 158 N. Y. 558; *People* v. *Wood*, 201 N. Y. 158; *People* v. *Hackett*, 82 App. Div. 86; *People* v. *Webster*, 139 N. Y. 73; *People* v. *Hinksman*, 192 N. Y. 421; *People* v. *Johnston*, 228 N. Y. 332; *People* v. *Davey*, 179 N. Y. 345.) The appellant Dreitzer's conviction was proved beyond a reasonable doubt. His con-

fession was properly received in evidence. He was not entitled to a separate trial. (*People* v. *Seppi*, 221 N. Y. 62; *People* v. *Trybus*, 219 N. Y. 18; *People* v. *Jackson*, 182 N. Y. 60; *People* v. *Meyer*, 162 N. Y. 357; *People* v. *Doran*, 246 N. Y. 409; *People* v. *Wiener*, 248 N. Y. 119; *People* v. *Nawakowski*, 221 App. Div. 521.)

O'BRIEN, J. These defendants were tried together and convicted of murder in the first degree committed while engaged in a felony.

During the first month of this year many robberies had been perpetrated in Brooklyn drug stores. Police officers had been detailed to protect these establishments and were stationed in some of them. On the night of January 31, William E. Kelly, an officer in plain clothes on duty in the rear of the store conducted by Irving Stoller at Nostrand avenue and Crown street, was shot and killed. Three young men were driven by a fourth to the store in a taxicab. All except the driver dismounted and, while one did not proceed beyond the outer room, two with drawn revolvers entered Stoller's prescription room. They commanded: "Stick em up," and in a struggle which followed between the officer and one of the invaders the policeman was killed. The three youths who entered the store have been identified as these defendants.

The driver of the taxicab, Samuel Krassner, was an accomplice and gave evidence on this trial. Subsequently, on his plea of manslaughter in the first degree, he was sentenced to a term of imprisonment. He testified that on the night of the murder he drove his taxicab from Suffolk and Rivington streets in Manhattan to Nostrand avenue and Crown street in Brooklyn. Helfant, Fisher and Dreitzer were his passengers. On five or six previous occasions he had gone with some of them when they held up places and on this night he understood that they intended to rob some place. On arrival near Stoller's drug store all three left the taxicab. Fisher and Dreitzer

went around the corner of the building in which that store was located. Helfant returned to the car and directed Krassner to drive up to the corner. Then Helfant again left the cab and walked into the store. Four or five minutes later Krassner saw Dreitzer and Helfant running with guns in their hands. They re-entered the cab and ordered him to drive. Dreitzer said to Helfant, "Hurry up, we killed the cop. We gave him the works, we found a badge in his pocket." They left Krassner at Dean street and Vanderbilt avenue, where he also abandoned his cab and, entering another one as a passenger, he was driven to a restaurant in Williamsburg. There he met Dreitzer and Helfant in the wash room, saw them cleaning their guns and heard Dreitzer complain that he had blood on his clothes. Two days later he met Dreitzer, Helfant and Fisher together on Norfolk street in Manhattan and, in the presence of all, Helfant made allusions to the murder and warned Krassner to withhold from the police his knowledge of the crime. Stoller, the proprietor of the drug store, recounted the entry of the robbers and some of the details of the affair preceding the shooting and identified Dreitzer and Fisher as the two who had entered his prescription room and engaged in the struggle with the policeman. He saw Dreitzer and another whom he could not identify enter a cab and drive away. Fisher was identified by Mrs. Zinnell who saw him running across the street from the drug store toward the departing taxicab immediately after the shooting. A few seconds later she saw him standing in front of the entrance of the building where she lived. He addressed her and pretended to have been disappointed at his inability to decipher the license number of the taxicab. It left before he had time to board it. Dreitzer was arrested at three o'clock in the afternoon of February 11th. At five minutes past midnight on the morning of the next day, by Fisher's testimony at the trial, Helfant and Fisher left New

York for Baltimore. There they remained until February 18th. The next morning both were arrested while guests at an hotel in West Forty-seventh street in New York where neither resided. Helfant lived with his parents in Brooklyn and Fisher for several years had led a transient and nomadic existence on the lower East Side of Manhattan. The testimony of the accomplice, corroborated by other evidence, tends to connect all these defendants with the commission of the crime and, exclusive of any confession, supports the judgment against them.

The vital question in this case relates to the propriety of the trial judge's exercise of discretion in denying motions made by each defendant for a separate trial. Having been jointly indicted, they could be tried separately or jointly in the discretion of the court. (Code Criminal Pro., section 391.) The statute primarily vests discretion in the trial judge and not in us. We will not substitute our discretion for his and we will not interfere unless an abuse has been committed. The mere existence of confessions and the probability of their introduction in evidence do not necessarily require separate trials. (*People* v. *Doran*, 246 N. Y. 409.) The proposition is, of course, elementary that the discretion must not be arbitrary and that its exercise is subject to review by a court having jurisdiction to pass upon facts. The test is whether a separate trial will assist or impede the proper administration of justice and secure to the accused the right of a fair trial. The question always presented by such a motion is whether a jury can properly weigh the testimony upon the various issues which may arise. " The decision of the trial court rendered before the trial is dictated by a reasonable anticipation based on the facts then disclosed. The decision of this court rendered upon a review of the trial itself rests upon determination of whether the prophesy has been realized." (*People* v. *Snyder*, 246 N. Y. 491, 497.)

Let us apply these tests.

Fisher has never admitted his guilt, but Dreitzer and Helfant, shortly after their arrest, made confessions by which they and Fisher were thoroughly implicated. They withdrew them and attempted to convince the jury that these incriminating statements were untrue and had been inspired solely by fear of police officers and through coercion. They asserted that they had been beaten and threatened and that except for such treatment they would always have maintained their innocence. After the introduction of testimony by prosecution and defense directed to the issue whether their confessions were voluntary, they were admitted in evidence. From such conflicting testimony, the jury could find either that no threats and assaults had been made or, if they had been made, that they did not constitute the motive for the prisoners' concession of guilt. A verdict importing voluntary action by Dreitzer and Helfant could rest upon the fact that their identity had previously been disclosed by Krassner. No promise of immunity had been given, but a reasonable conclusion could follow from all the evidence that, like Krassner, they, too, hoped that, if they told the truth, the consequences to them might be less severe. The issue concerning the voluntary or enforced nature of their confessions was submitted in a charge harmonious with the rule in *People* v. *Doran* (*supra*) and *People* v. *Weiner* (248 N. Y. 118). Instructions also were given that neither confession, even if voluntary and credible, could properly be considered against any defendant except the one who made it.

A jury's difficulty in discarding such crushing proof of guilt against all three defendants as is displayed by these voluntary confessions by two of them is readily understood. If this judgment rested upon partially forbidden evidence, some of which was admissible only against Dreitzer and some only against Helfant but neither kind admissible against Fisher, the convictions could not stand. The basis for the judgment is, however, totally

different. Cast out the confessions and the result would
need to be the same. Its foundation, therefore, may be
perceived in evidence entirely dissociated from the
confessions. On a record abounding less in independent
proof of guilt, some perplexity and wavering doubt might
arise. Even with the confessions in evidence, the jury
under instruction from the court, must have realized that
an ultimate estimate of the case leaves only one issue:
Who were the three men who entered Stoller's drug
store immediately prior to Kelly's death? Those three
men, whoever they were, committed the felony in prog-
ress when Kelly was slain. Proof of their identity,
from sources unrelated to the confessions, is complete.
The testimony is reasonable and the jury had no justifi-
cation for doubting it. Three trials would impede the
course of justice. Public rights would be incumbered by
delays and expense. The probability of acquittal for any
one of these defendants would not be increased. If
Fisher were tried alone, the jury could not fairly dis-
regard testimony by Krassner that Fisher was one of the
passengers in his taxicab and left it directly in front of
the building where the murder occurred, nor testimony
by Stoller that he was one of the robbers who entered
the store, nor testimony by Mrs. Zinnell that he attempted
to escape in Krassner's cab immediately after the killing,
nor his own testimony that he departed from the city
within a few hours after the arrest of Dreitzer, proof of
whose identity would have been admissible on a separate
trial of Fisher, and that he returned to New York with
Helfant, proof of whose identity would be equally
admissible on a separate trial of Fisher, and that under
an assumed name he registered with Helfant at an hotel
several miles from the locality which he was accustomed
to haunt. Suppose Helfant had a separate trial. He,
too, would be confronted by Krassner's evidence that he
left the cab, entered the store, returned with a gun in his
hand, cleaned that gun in the washroom of the restaurant

and a few days thereafter, in conversation with Krassner, Fisher and Dreitzer, he referred to the murder. He admitted his departure to Baltimore and his arrest at the New York hotel in company with Fisher. Fisher's father testified that Helfant had spent the time from February 12 to February 18 in his house at Baltimore, How could Dreitzer have fared better if he were sole defendant? Identification by Krassner and Stoller was positive. One swore that he drove him to the scene of the murder and drove him away again, that later he cleaned his gun in the washroom and called attention to blood on his clothes. The other swore that Dreitzer was the man who pointed a revolver at him in the prescription room of the drug store. The problem of the identity of the three murderers could be and was solved to the satisfaction of one jury with the same degree of reasonable certainty as ought to be acceptable to three juries. We cannot force ourselves into such a state of mind as might induce us to indulge in speculation whether one trial instead of three affected the substantial rights of any of these defendants. Each had a fair trial. Justice has been wrought according to law and we know it.

Varying circumstances bear upon the soundness of discretion to be exercised under section 391 of the Code of Criminal Procedure in refusing to grant motions for separate trials. The rule is not doubtful. We have expressed it in the *Doran* and *Snyder* cases. Its correct application must rest upon the facts in each case. Prospection by the trial judge is not final. A retrospective view by an appellate court may reveal injustice or impairment of substantial rights unseen at the beginning. In a case where, without the existence of a confession by one defendant, the evidence against another would be too weak to justify a conviction or even where a conviction would be doubtful, our review of the judgment would compel us to conclude that an abuse of discretion had been committed. One who makes no

confession must be found guilty, if at all, only on proof independent of a confession by a codefendant. Here we find no reversible error and so the judgment of conviction should be affirmed.

LEHMAN, J. (dissenting). On January 31, 1928, William E. Kelly, a police officer, was killed while attempting to protect a drug store against an attempted robbery. Four men have been charged with his murder. Three have been convicted after a joint trial in which the fourth took the stand as a witness for the People.

All three defendants moved before trial for separate trials. The motion was denied. It was renewed several times at the trial. Each defendant has at all times contended that he could not have a fair trial before a jury which was called upon to decide the guilt of all.

The Code of Criminal Procedure permits a joint or several trial " in the discretion of the Court." Every person accused of wrong is entitled to a fair trial by an impartial jury. Only a jury — not this court or any other court — may pass upon the guilt of an accused, and the jury's verdict must be based upon a fair consideration of competent evidence bearing upon the guilt of the accused. The constitutional guaranties of life and liberty, which we claim to cherish, and the rules of evidence in criminal cases, have been devised as means to this end. No considerations of expense to the State, inconvenience to witnesses and public authorities, or even of delay in punishment of the guilty can justify a procedure which results in serious impairment of the rights of an accused to a fair consideration by an impartial jury of the competent testimony produced against him.

Upon a joint trial the jury is called upon to decide the guilt of each accused. The jury hears the evidence produced against all. Evidence which is relevant as to the guilt of one accused may be irrelevant upon the guilt of a codefendant. One defendant may have made

admissions or confession which are competent evidence against him. They are inadmissible against the other defendants. The jury must sift the evidence produced before it, and in arriving at its determination of the guilt of each defendant it may consider only the evidence which is competent and relevant against that particular defendant. We may assume that jurors will try to obey the instructions of the court and to give to each defendant a fair trial. The question will always remain whether they can do so in a particular case. That question is now before us in this case.

Judge O'BRIEN summarised somewhat briefly the testimony produced at the trial of the three defendants. If the testimony of Krassner, the confessed accomplice, is true, then there can be no doubt that all the defendants are guilty. Undoubtedly there is ample evidence in corroboration to sustain a finding of guilt against each. Dreitzer has confessed, though on the stand he repudiated his confession. He has also been identified by the owner of the drug store. Helfant has made admissions which, if voluntary, demonstrate his guilt. Fisher has been identified by two impartial and credible witnesses, and some circumstantial evidence tends to show consciousness of guilt.

I doubt whether any person can read Krassner's testimony without arriving at the conviction that he is a poor wretch, cowering with fear at the prospect of a conviction which would bring with it the death penalty and willing to testify, truthfully or falsely, against a guilty participant in his crime or against an innocent person, if only he can save his own life. Nevertheless when Dreitzer's confession and Helfant's admissions substantiating the accusations of Krassner against these three defendants were produced in evidence, doubt as to the truth of the accusations which might be founded upon Krassner's character disappears. Dreitzer's confession was admissible against him. Helfant's admissions were competent against him. The evidence produced by all the

defendants in this case that they had been subjected
to cajolery, threats or blows by the police might perhaps
tend to induce the jury to throw out both the confession
of Dreitzer and the admissions of Helfant. It could not
reasonably — or, I might even say, possibly — impede
the fair consideration by the jury of the evidence upon
this point produced by each. Failure to sift and separate
such evidence might prejudice the case of the People;
we may say with reasonable certainty that it could not
prejudice the case of any defendant. The jury did not
reject Helfant's admissions. Otherwise his acquittal
would have followed, as a matter of law. Those
admissions established Helfant's guilt so clearly that the
case against him could not have been much stronger if
he had joined in Dreitzer's confessions. Certainly the
case against Dreitzer would hardly have been strengthened
if he had joined in Helfant's admissions. Even where
incompetent evidence has been erroneously admitted
against a defendant we may disregard the error if the
weight of the competent evidence is so great that the
additional incompetent evidence adds no perceptible force
to the People's case. Under such circumstances we decide
not that the defendant is guilty but that the jury's verdict
of guilt could not have been influenced by the error.
So here we may say that the jury's verdict against either
Helfant or Dreitzer could not have been influenced by
the testimony which would have been excluded at a sepa-
rate trial.

The case against Fisher is entirely different. I have
pointed out that he has not confessed or admitted any
participation in the crime charged against him. The case
against him may be as strong as the majority of the
court believes. It may be that the jury upon a separate
trial must reasonably arrive at the same verdict. Unless
we are prepared to say that we may pass upon the guilt
of an accused in place of a jury, we may not conjecture
or even reason as to what a jury would do upon a separate

trial. We may only consider whether the jury in the present case could and did give fair consideration to the evidence bearing on the defendant's guilt. All else is irrelevant.

Since that is the only question which I consider serious in this case, no extended analysis of the competent evidence against Fisher is necessary. Krassner testified that Fisher was a passenger in his taxicab and left it directly in front of the building, but Krassner's credibility was impeached if not destroyed. Stoller, the owner of the drug store, identified Fisher as one of the robbers, and Mrs. Zinnell testified that he tried to escape in the taxicab after the robbery, but though both witnesses were undoubtedly honest and conscientious, there is ground for argument that their identification was mistaken. Indeed, other witnesses produced by the People inferentially contradict Mrs. Zinnell. Fisher's visit to his father's home in Baltimore for six days is explained by him, and though he registered at a New York hotel under an assumed name, it was a name which he had used for some time. All these were matters which the jury was called upon to weigh. Can it be said that they did so upon this trial?

Judge O'BRIEN states that " Even with the confessions in evidence, the jury, under instruction from the court, must have realized that an ultimate estimate of the case leaves only one issue: Who were the three men who entered Stoller's drug store immediately prior to Kelly's death? " I accept that analysis of the issue in the case. The confession of Dreitzer, the admissions of Helfant, established beyond doubt that Krassner's testimony was true; that Stoller had identified the right men. We may well assume that the jury understood that the confession and admissions might not be considered against Fisher, but when the confession and admissions had resulted in establishing the truth and accuracy of the testimony given by Krassner and Stoller, could the jury then weigh

the credibility of that testimony over again, ignoring the very testimony which had already substantiated it? Certainly jurors are not accustomed to weigh evidence in that manner, and I confess that neither legal training nor long judicial experience has given me the ability to do so. The jury might perhaps separate the issues raised by each defense and consider only the competent and relevant evidence bearing on those defenses, but it seems clear to me that in weighing the credibility of the testimony against Fisher, they could not and did not ignore knowledge derived from other evidence which lent credibility to that testimony. In the final analysis the confession of Dreitzer and the admissions of Helfant led inevitably to the conviction of Fisher, and if the testimony relevant to Fisher's guilt had been weaker and his own testimony stronger, the result would have been the same.

We still adhere to the rule that an accused is entitled to confrontation of the witnesses against him and the right to cross-examine them; yet here Fisher has been accused by his codefendants in their statements made before trial, and this evidence brought to the attention of the jury who were to pass on Fisher's guilt at the same time as they passed on the guilt of his codefendants. We destroy the age-old rule which in the past has been regarded as a fundamental principle of our jurisprudence by a legalistic formula, required of the judge, that the jury may not consider any admissions against any party who did not join in them. We secure greater speed, economy and convenience in the administration of the law at the price of fundamental principles of constitutional liberty. That price is too high. Our ideal is that justice should be swift and certain. Human justice is still far from that ideal; and sometimes I feel that a proper zeal to destroy technicalities and achieve a more efficient administration of justice leads us to disregard fundamental principles and guaranties. Though the time may have

come, as I think it has, for reconsideration and revision of the constitutional guaranties of liberty and statutory rules of evidence or procedure, that function does not rest with the courts. We may not do by indirection even for a laudable purpose what we are forbidden to do directly. Our duty is to preserve intact our constitutional guaranties and apply them not only in the letter but in the spirit. That, I feel, has not been done here.

Judgments against Dreitzer and Helfant should be affirmed, and judgment against Fisher reversed.

CARDOZO, Ch. J., POUND, CRANE and ANDREWS, JJ., concur with O'BRIEN, J.; LEHMAN, J., dissents in opinion as to defendant Fisher, in which KELLOGG, J., concurs.

Judgment affirmed.