THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ABE LASH-
KOWITZ, PHILIP GOLDBERG, BENJAMIN WEINER and ABE WALES,
Defendants.

County Court, Sullivan County, March 17, 1938.

*William Deckelman, District Attorney,* for the plaintiff.

*Isadore Rothenberg,* for the defendant Abe Lashkowitz.

COOKE, J. This is an application for a separate trial made in
behalf of Abe Lashkowitz.

In *People* v. *Snyder* (246 N. Y. 491, at pp. 496, 497) it is stated:
" Section 391 of the Code of Criminal Procedure as recently amended
(L. 1926, ch. 461) provides that defendants jointly indicted may
be tried separately or jointly in the discretion of the court. It
may be assumed that the Legislature did not intend to leave arbi-
trary choice to the court. Discretion involves the exercise of a
sound judgment, and its attempted exercise may be reviewed by
an appellate court, at least where the appellate court has juris-
diction to pass upon questions of fact. The statute has merely

restored the common-law rule that a separate trial of defendants who were jointly indicted might not be demanded as a matter of right by the accused but might be ordered in its discretion by the court. (*People* v. *Howell*, 4 Johns. 296; *People* v. *Vermilyea*, 7 Cow. 108.) That rule prevailed not only in England but in this State until changed in this State in 1829 by statute. (See *People* v. *Doran*, 246 N. Y. 409.) In *U. S.* v. *Marchant* (4 Mason, 258; affd., 25 U. S. 480) Mr. Justice STORY has reviewed the history of the exercise of the power of the court to grant a separate trial to persons jointly indicted. He pointed out that at common law as developed in England, persons jointly indicted might be jointly tried unless the court in its discretion ordered that each defendant should be tried separately; though the difficulty of obtaining a jury at a joint trial, if each defendant insisted upon the exercise of his right to interpose the full number of peremptory challenges accorded to him under the law of England, gave rise to a general custom of ordering separate trials unless the defendants agreed to join in all peremptory challenges. Since that case all jurisdictions in this country have accepted the rule that defendants jointly indicted are not entitled to separate trials unless the court in the exercise of its discretion so orders. Appellate courts in various jurisdictions have at times reviewed such orders. No general rule limiting or governing the exercise of the court's discretion can be deduced from these decisions. The Legislature has not seen fit to set fixed bounds to the exercise of the discretion it has restored to the courts. The courts should apply but one test. Will a separate trial impede or assist the proper administration of justice in a particular case and secure to the accused the right of a fair trial? The decision of the trial court rendered before the trial is dictated by a reasonable anticipation based on the facts then disclosed. The decision of this court rendered upon a review of the trial itself rests upon determination of whether the prophesy has been realized." (See Code Crim. Proc. § 391, and the cases cited thereunder.)

In *People* v. *Fisher* (249 N. Y. 419, at p. 424) we find:

" The mere existence of confessions and the probability of their introduction in evidence do not necessarily require separate trials. (*People* v. *Doran*, 246 N. Y. 409.) The proposition is, of course, elementary that the discretion must not be arbitrary and that its exercise is subject to review by a court having jurisdiction to pass upon facts. The test is whether a separate trial will assist or impede the proper administration of justice and secure to the accused the right of a fair trial. The question always presented by such a motion is whether a jury can properly weigh the testimony upon the various issues which may arise."

At page 427 it states: "Varying circumstances bear upon the soundness of discretion to be exercised under section 391 of the Code of Criminal Procedure in refusing to grant motions for separate trials. The rule is not doubtful. We have expressed it in the *Doran* and *Snyder* cases. Its correct application must rest upon the facts in each case. Prospection by the trial judge is not final. A retrospective view by an appellate court may reveal injustice or impairment of substantial rights unseen at the beginning. In a case where, without the existence of a confession by one defendant, the evidence against another would be too weak to justify a conviction or even where a conviction would be doubtful, our review of the judgment would compel us to conclude that an abuse of discretion had been committed. One who makes no confession must be found guilty, if at all, only on proof independent of a confession by a codefendant."

Here, as outlined by the papers and the argument, it is desired that three of these defendants be tried together. The defendant Lashkowitz, who has not made any confession; the defendant Weiner, whom it is alleged made a confession implicating defendant Lashkowitz. It is claimed that he now repudiates this alleged confession, maintains it was obtained by force and that it was not voluntarily made by him. The defendant Goldberg is the other defendant to be tried and it is claimed that he is a witness for the People under a promise of immunity from the prosecution. The defendant Wales is not to be tried at this time.

In *People* v. *Kassis* (145 Misc. 493, at p. 494) the court said: "Neither defendant has confessed or made admissions of guilt or in any way incriminated the other. Under those circumstances the proper administration of justice requires a joint trial."

In *People* v. *Wargo* (149 Misc. 461, at p. 462) the court said: "The sacred right of this defendant woman to a fair trial demands, in this instance, the separation of her trial from that of her co-defendant. The reason lies in the fact of the intensely antagonistic interests of the two defendants, the fact that the woman did not actually participate in the killing, the fact that the man confessed and the woman did not and the possible and perhaps probable fact that without the improper effect upon a juror's mind of the confession of the man, a conviction could not be had of the woman. After the selection of a jury the district attorney, as was indicated upon the oral argument, might call the defendant Wargo as his witness. The confession of that witness would still be proper evidence upon the trial *only against him* while his testimony would be proper evidence against both. Theoretically easy, it is practically

difficult for any court to properly instruct a jury upon these important phases of the case. Across that bridge lies the inability of any ordinary juror to grasp and obey such instructions. Upon a joint trial either defendant might easily, in his or her own interest, deprive the other of all right to peremptory challenge. (*People* v. *Fisher*, 249 N. Y. 419, at p. 425.) Even though there may be basis for the contention that no one of these reasons is sufficient, yet in the aggregate they control the discretion of a trial judge whose practical experience has witnessed their soundness. They minimize to almost nothing the popular demand for greater speed, economy and convenience in the administration of the law at the sacrifice of justice to the individual. The trial of petty cases in the Supreme Court can very well yield sufficient time for separate trials in a proper case such as this which must be classed as the most important of all litigations because, upon its outcome, is dependent the guaranteed and inalienable right of human life."

The progress of the human race has always chosen for one of its objectives that every one accused of crime shall have a fair trial. Many of the dark pages of history are those wherein it is portrayed that the ruling class for one reason or another denied this right to their fellow man. It is not only a matter of law, it is a matter of conscience. To say that by trying one in a group a conviction would be more likely because the competent evidence against the other two would create an atmosphere or a situation from which the third could not so easily escape, is to admit that the direction to the jury that each defendant is entitled to the same rights as if he were tried separately, that the evidence as to each defendant must satisfy them that each defendant is guilty beyond a reasonable doubt and the other instructions to which each is entitled, would be less effective than if the defendant had a separate trial.

The Magna Charta of 1215 provided that no freeman shall be taken or imprisoned or disseized or outlawed or exiled or in any way harmed — nor will we go upon or send upon him — save by the lawful judgment of his peers or by the law of the land.

Our own Constitution (U. S. Const. art. 6) provides: " In all criminal prosecutions, the accused shall enjoy the rights to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

An impartial jury is one which is of that frame of mind at the beginning of the trial, one which is influenced during the trial only by legal and competent evidence produced during that trial against that defendant and which bases its verdict upon the evidence connecting that defendant with the commission of that crime.

It is an old and sound doctrine that no one shall be convicted of a crime unless the legal evidence against him fully warrants and justifies such conviction. No doubt there are cases where there is some evidence but not enough to sustain a conviction. In this class of cases zeal cannot supplant proof nor good intentions atone for the denial of constitutional rights.

As Judge LEHMAN said in his dissenting opinion in the *Fisher* case (249 N. Y. 432): " We destroy the age-old rule which in the past has been regarded as a fundamental principle of our jurisprudence by a legalistic formula, required of the judge, that the jury may not consider any admissions against any party who did not join in them. We secure greater speed, economy and convenience in the administration of the law at the price of fundamental principles of constitutional liberty. That price is too high. Our ideal is that justice should be swift and certain. Human justice is still far from that ideal; and sometimes I feel that a proper zeal to destroy technicalities and achieve a more efficient administration of justice leads us to disregard fundamental principles and guaranties. Though the time may have come, as I think it has, for reconsideration and revision of the constitutional guaranties of liberty and statutory rules of evidence or procedure, that function does not rest with the courts. We may not do by indirection even for a laudable purpose what we are forbidden to do directly. Our duty is to preserve intact our constitutional guaranties and apply them not only in the letter but in the spirit. That, I feel, has not been done here."

The indictment herein contains two counts accusing the defendants with the commission of the crime of arson in the second degree and with the crime of arson in the third degree. From the bill of particulars it may be inferred that the contention of the prosecution is that the defendant Lashkowitz hired one or more of the other defendants to burn this building. It is claimed that the fire occurred on or about October 13, 1932. It is expected that Goldberg will be a witness for the People. If this be true, he will, no doubt, incriminate Lashkowitz and Weiner. If Weiner has made a confession involving Lashkowitz, it would be competent if procured properly and legally as against Weiner, but not as against Lashkowitz. These complications might unconsciously result in an unfair trial to the one who had neither confessed nor become a

witness for the prosecution, if they were all tried together. No one with a sense of justice would deem it fair to convict another of a serious crime upon suspicion, or upon a desire, however laudable, without sufficient satisfactory proof or upon the reason that the end alone justifies the means.

In *People* v. *Schemnitzer* (142 Misc. 16) it seems that the affidavit sets forth as one of its grounds certain facts on information and belief without stating the source of his information or the grounds of his belief. Courts have often passed upon the value of this kind of an affidavit.

In *People* v. *Gaskill* (132 Misc. 318) the reasons urged why the defendants could not have a fair trial do not appear, except it was claimed there was delay in having the trial which may have been justifiable. In *People* v. *Marcus* (222 App. Div. 697) the application was not made until the jury had been examined, accepted, impaneled and sworn.

No doubt in the ordinary case defendants jointly indicted could safely and fairly be tried together. If all defendants were found at the scene of the alleged crime or in many other cases, a different problem would be presented. Each case depends upon the facts of that case. If confessions are obtained, care should be used in their preparation so as to eliminate this objection.

It seems in this case, under the facts and under the law, the motion should be granted.

Order may be agreed upon or settled on notice.