Wachtler, J.
On September 30, 1970 the State police were notified that Martha Kirk had been missing for several days. On that same date they discovered her car in the parking lot of *25 Merrill’s restaurant in the Town of Floyd. The owner of the restaurant recalled first seeing the car there during the early morning hours of September 27,1970.
On October 4, 1970 Martha Kirk’s body was discovered in a wooded area in the nearby Town of Steuben. The autopsy showed she had died of strangulation.
The defendants were identified as patrons of the bar at Merrill’s on the night Miss Kirk disappeared. "When questioned by the police they initially denied this and the officers ’ suspicions were aroused. After being questioned further at the police station each of the defendants signed a statement admitting some degree of involvement and implicating the others.
The statements are in substantial agreement that the defendants arrived at Merrill’s at about 1:30 on the morning of September 27, and upon seeing Martha Kirk in her car, drunk and unconscious, they removed her to their vehicle and proceeded to a secluded area in the mountains. There is some disagreement as to exactly what happened at that scene. The greatest disparity is found in the statements of Streiff and his codefendant Richard Payne.
According to Streiff’s statement they removed Martha, fully clothed, from their car and carried her into the woods where she was left alone with Payne. Approximately a half hour later Payne returned and told them that she had stopped breathing. Payne on the other hand stated that while the car was in motion he removed all of Martha’s clothing with the exception of some of her upper garments. When they arrived at the scene, according to Payne’s statement, Streiff and Davis said “ let’s get her out of the car ” because “ they wanted to try for a while.” According to Payne it was also Streiff and Davis who opened the back door of the car and started pulling on her “ shirt or sweater ” causing her to struggle and scream. Then when she was on the ground, Payne’s statement continued, “ we tore off her blouse or sweater, whatever it was, her bra ”, and while they all stood around, Payne stated he lay down beside her with his erect penis exposed at which point they discovered she had stopped breathing.
Only one of the defendants, Charles Streiff, moved for a severance and a separate trial. This motion was denied and all three of the defendants were tried together.
*26 Each of the statements were admitted at the trial, but according to the court’s instructions, and the established law in this State (People v. Ryan, 263 N. Y. 298, 305; see, also, Richardson, Evidence [9th ed.], §§ 280, 309) only to be considered as evidence against the defendant who made it.[1] The defendants took the stand on their own behalf, denied any involvement in the crime and claimed that the statements had been coerced. The jury found all of the defendants guilty of felony murder, where according to the indictment the underlying felony was attempted rape. They were sentenced to 25 years to life imprisonment.
The Appellate Division affirmed in an opinion (41 A D 2d 259) finding, inter alia, that no error was committed in denying Streiff’s motion for a separate trial. On this point we disagree. In our view the record demonstrates that the defendant Streiff was prejudiced by the joint trial, and is entitled to be tried separately.
An application for a separate trial is addressed to the court’s discretion in the first instance (GPL 200.40, subd. 1, formerly Code Grim. Pro., § 391). But the discretion is not absolute, nor is the court’s determination final for “ [a] retrospective view by an appellate court may reveal injustice or impairment of substantial rights unseen at the beginning ” (People v. Fisher, 249 N. Y. 419, 427).
The defendant, of course, is deprived of a substantial right whenever he is denied the right to confront his accusers. Thus when a codefendant’s confession is introduced at the trial the defendant’s rights are violated unless the codefendant takes the stand (Bruton v. United States, 391 U. S. 123; People v. Anthony, 24 N Y 2d 696) even if only to denounce the confession and proclaim his innocence (Nelson v. O’Neil, 402 U. S. 622). Here the codefendants did just that and thus the introduction of their statements did not violate Streiff’s Sixth Amendment right of confrontation.
But this is just one way in which a denial of a motion for a separate trial may result in “ injustice or impairment of substantial rights.” Quite apart from the Federal right of recent *27 vintage, is a significant body of well-settled case law establishing, for this State, minimum fair trial standards in cases involving multiple defendants (see, e.g., People v. Snyder, 246 N. Y. 491; People v. Fisher, supra; People v. Feolo, 282 N. Y. 276; People v. La Belle, 18 N Y 2d 405). Under these standards the defendant’s right to a separate trial is broader than his right to confrontation and may be found to exist even where the codefendant has remained completely silent both before and during trial (see, e.g., People v. La Belle, supra; cf. People v. Owens, 22 N Y 2d 93; People v. Bornholdt, 33 N Y 2d 75).
However for the most part we have been concerned with cases, such as the one now before us, in which the defendant sought a separate trial because a codefendant had made a pretrial statement in which he was implicated. The statement of course is hearsay inadmissible against the defendant (see, e.g., People v. Ryan, 263 N. Y. 298; People v. Jackson, 18 N Y 2d 516). On the other hand since it is an admission by the codefendant it may be received as evidence against him, the codefendant, at his own trial. The problem crystallizes when they are tried together for the statement will find its way into the trial as part of the People’s case, although properly it should only serve to establish the codefendant’s guilt.
This poses a special problem for the jury and an obvious threat to the defendant’s right to a fair trial. In addition to considering the guilt of each of the defendants separately, the jury must also perform the delicate task of sorting out the evidence which applies to each of them, but not necessarily to the others. The defendant then runs the risk that, despite the court’s instructions on this point, the jury may inadvertently, perhaps willfully, follow the natural inclination to consider all the evidence taken at a single trial as evidence against all of the defendants collectively.
Nevertheless we may discount the possibility of real prejudice when the defendant himself has made a statement which is almost identical to the codefendant’s (People v. Snyder, 246 N. Y. 491, supra; cf. People v. McNeil, 24 N Y 2d 550) or when the independent proof of the defendant’s guilt is substantial (People v. Fisher, 249 N. Y. 419, supra). Under these circumstances, there is little likelihood that the jury has found the defendant guilty on legally insufficient evidence or found it necessary to use thé code *28 fendant’s statement as a guide for resolving ambiguities in the People’s case against the other. For this reason the general rule is that “ The mere existence of confessions and the possibility of their introduction in evidence do not necessarily require separate trials.” (People v. Fisher, supra, at p. 424). But it also explains why'“ In a case where, without the existence • of a confession by one defendant, the evidence against another would be too weak to justify a conviction or even where a conviction would be doubtful, our review of the judgment would compel us to conclude that an abuse of discretion had been committed.” (People v. Fisher, supra, at pp. 427-428.) We have concluded that this is one of those exceptional cases in which a severance should have been granted, because without Payne’s statement the possibility of Streiff’s conviction for felony murder was most remote.
In order to sustain this count, at this trial, the People were bound to rely essentially on the admissions contained in Streiff’s redacted statement.[2] This established that Streiff assisted in taking the unconscious victim from her car; that he subsequently assisted in removing her from their car and that he left her alone with Payne who later informed him that she had died. On this evidence the jury was justified in concluding that the defendant had engaged in criminal conduct. But to borrow from Judge Cabdozo, once the defendant is connected with the crime, ‘ ‘ Only half of the problem * * * has been solved * * * There remains the question of the nature of the offense.” (People v. Galbo, 218 N. Y. 283, 290).
While this evidence might well establish Streiff’s guilt of lesser offenses, the People chose to seek a conviction for felony murder. In reaching for this higher crime they stretched their evidence to the limit. The weak point here is that Streiff’s statement stops short of telling what occurred when Payne was left with Martha Kirk.
The problem is that Payne’s statement, clearly inadmissible against Streiff, so neatly fills the gap. From a purely legal standpoint, Payne’s admission that he lay next to the naked girl with his erect penis exposed, shows that he at least “ carr [ied] *29 the project forward within dangerous proximity to the criminal end to be attained ” (People v. Ditchik, 288 N. Y. 95, 96; see, also, Penal Law, § 110.00). From the jury’s point of view it is hard to imagine that this dramatic admission was considered anything but clear and unmistakable proof that there had in fact been an attempt at rape.
It is possible that the jury, heeding the court’s instructions, disregarded Payne’s statement when it voted to convict Streiff and relied solely on Streiff’s admissions, drawing the same inference after independently weighing and rejecting the alternatives. But we cannot reach this conclusion in this case with any degree of confidence since Payne’s statement so clearly and ineradicably charts the course to guilt.
And even if we were able to say that a jury could conceivably single out such crushing proof and recognize it only for what it is — an admission of guilt by an individual defendant — we could not say that in this case. For in his statement Payne went far beyond a personal acknowledgment of guilt by drawing his companions to the scene of his sexual advances, where according to him, they stood about overseeing his conduct, and anxiously awaiting their turn. In other words, applying the familiar test, this is not a case in which we could say “ Oast out the [codefendant’s] confessions and the result would need to be the same ” (People v. Fisher, supra, at p. 426; see, also, People v. Feolo, 282 N. Y. 276, supra).
In sum, at this trial the proof of Streiff’s guilt of felony murder, based essentially on his redacted pretrial statement, was not substantial, and the codefendant’s statement cannot be dismissed as almost identical. Since Streiff’s statement left some doubt as to whether rape had been attempted, his rights were substantially prejudiced when he was tried together with Payne who had previously admitted in dramatic and explicit terms that the underlying felony had in fact been committed. Simple fairness requires that under these circumstances Streiff be tried separately in an atmosphere free of the hearsay accusations, which would necessarily infect a joint trial.
Accordingly the order of the Appellate Division affirming the conviction of Charles Streiff is reversed and a new trial granted. As to the other defendants, Davis and Payne, we agree *30 with the conclusions reached by the Appellate Division, and the order appealed from in those cases should be affirmed.

. The trial court made some effort to redact the portions of the statements implicating codefendants, which although incomplete was not objected to at the trial and thus is not preserved for review (CPL 470.05, subd. 2).

. We note that upon a new and separate trial the People may use the statement without redaction.