■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KIP EVANS, Appellant. — Judgment rendered June 1, 1983 in Supreme Court, Bronx County (Peggy Bernheim, J.), convicting defendant of murder in the second degree and robbery in the first degree, reversed, on the law, and a new trial is ordered. Three men were seen running away from an apartment building just after an elderly man had been knifed in a lobby mugging. The victim managed to take the elevator up to his apartment door, where he collapsed in his

daughter's arms and died. John Ingram was arrested for the crime and several statements were taken from him, the last of which was videotaped. Ingram's recorded interview with the District Attorney (which took 45 minutes and transcribed to 39 pages) largely exculpated him, attributing the planning and performance of the mugging to defendant and another, named "Young Intelligence". Ingram described himself as only a "drugged-out watchdog". When defendant was arrested, a statement had been taken from Nolan McGarrah stating that he had met Mr. Evans shortly after ambulances arrived at the apartment building. Allegedly defendant had said, "I don't know what happened down there, but I'm not going down there to let the cops pick me up, and to bring me in for anything." Evans also reportedly gave McGarrah a knife that the latter threw in a sewer the next day when he "found out somebody was stabbed" with a knife. Confronting Evans a month later, he asked the defendant if he knew what had happened, to which Evans allegedly said, "yeah, me and John-Boy we vamped this man in the building, and I had to stab him." At trial, McGarrah testified against defendant, but this time only quoted him as saying, "me and John-Boy vamped this man in my building". The prosecutor also introduced McGarrah's Grand Jury testimony, as quoted above. The court having denied a motion for severance, defendant and Ingram were tried together (McGarrah had testified under a grant of immunity), and the videotape of Ingram's interview by the Assistant District Attorney was played for the jury. Ingram, however, did not take the stand. Thus there was no corrective on the clear *Bruton* error (*Bruton v United States,* 391 US 123; cf. *People v Anthony,* 24 NY2d 696) and McGarrah's allegations were neither the same in material fact as Ingram's (*People v Safian,* 46 NY2d 181), nor an actual confession of defendant's. (Accord *People v Baker,* 26 NY2d 169.) Defendant made no "full and voluntary confession" and the introduction at his trial of Ingram's statement was a fatal exposure to the "likelihood that the jury would believe [the codefendant] made the statements and that they were true — not just the self-incriminating portions but those implicating petitioner as well. Plainly, the introduction of [the codefendant's] confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since [the codefendant] did not take the stand. Petitioner thus was denied his constitutional right of confrontation." (*Bruton v United States, supra,* at pp 127-128; see, also, *People v Smalls,* 55 NY2d 407, 415-416.) Our analysis cannot rely totally upon *Bruton* and its progeny because even could a neutral assessment conclude that the two statements were substantially interlocking, the court's denial of defendant's motion for a severed, separate trial resulted in "injustice or impairment of substantial rights". (*People v Fisher,* 249 NY 419, 427.) "Quite apart from the Federal right of recent vintage, is a significant body of well-settled case law establishing for this State, minimum fair trial standards in cases involving multiple defendants * * * Under these standards the defendant's right to a separate trial is broader than his right to confrontation and may be found to exist even where the codefendant has remained completely silent both before and during trial". (*People v Payne,* 35 NY2d 22, 26-27; citations omitted.) Since Ingram's pretrial statement was inadmissible hearsay regarding defendant, some measure of consistency about the number of people involved and nature of the activity has to be found within McGarrah's statement to find the two to be interlocking. They are not. Add to this the midtrial introduction of a possibly exculpatory confession by totally unrelated actors, and the impermissible weight of Ingram's statement in proving defendant's guilt is demonstrated. For all of these reasons we find that, both as a constitutional matter and as an evidentiary ruling (cf. *Bruton v United States, supra,* at p 136, n 12), the admission of Ingram's statement in defendant's trial created "a reasonable possibility that

the evidence complained of might have contributed to the conviction." (*Fahy v Connecticut,* 375 US 85, 86-87.) It was, therefore, not harmless error. Accordingly, the conviction should be vacated and the defendant remanded for a new trial. Concur — Kupferman, J. P., Ross, Carro, Asch and Alexander, JJ.