# Supreme Court, Appellate Division, First Department

August 5, 1904.

## THE PEOPLE v. LUIGI LAGROPPO.

(179 N. Y. 126.)

MURDER—SUFFICIENCY OF EVIDENCE.

> The evidence upon a trial for homocide examined and held sufficient to sustain the conviction of the defendant of the crime of murder in the second degree.

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 28, 1904, which affirmed a judgment of the Court of General Sessions in the county of New York convicting the defendant of the crime of murder in the second degree.

. The facts, so far as material, are stated in the opinion.

Charles G. F. Wahle for appellant. The charge under which this case was submitted to the jury was erroneous, and though there are no exceptions to the charge, it is sought upon this appeal to attack its correctness because of the permission given in section 527 of the Code of Criminal Procedure, and because it is claimed that the verdict is not

right and not based upon evidence that is clear and convincing. (People v. Tobin, 176 N. Y. 278; People v. Montgomery, 176 N. Y. 219; Sullivan v. People, 27 Hun, 37; People v. Livingston, 27 Hun, 107; Case v. People, 76 N. Y. 242; People v. Bennett, 49 N. Y. 139; People v. Cantor, 71 App. Div. 185; Kellegher v. F. S. S. R. R. Co., 171 N. Y. 309.)

William Travers Jerome, District Attorney (Howard S. Gans of counsel), for respondent. No error is presented by the exceptions. (People v. Donovan, 101 N. Y. 632; People v. Brooks, 131 N. Y. 321; People v. Filipelli, 173 N. Y. 509.)

O'BRIEN, J.

The defendant was convicted of murder in the second degree upon an indictment charging him with murder in the first degree. Upon a review of the case at the Appellate Division, the judgment of conviction was affirmed. The questions presented by this appeal are whether there was evidence to establish the charge of homicide sufficient to carry the case to the jury and whether any material legal error was committed at the trial.

The question of fact involved in the case was whether the defendant feloniously caused the death of one Antonio Avacato on the 30th day of May, 1902. The criminal agency of the defendant as the cause of the death, as well as the corpus delicti itself, is involved in some obscurity for the reason that the movements of the deceased from the time that the fatal wounds were inflicted until his dead body was found, were not fully and completely traced by the proofs at the trial. But we think that there was no material defect or hiatus in the proofs upon these issues.

It appears that the dead body of Avacato was found at the morgue in the city of New York on the first of June, a day or two after a personal struggle and collision took p'ace between himself and defendant, which will be referred to hereafter. How the body came there does not distinctly appear, but the inference is that he died of his wounds while in an ambulance in charge of some one, probably some policeman. However that may be, the proof is quite clear that it was removed from there by the undertaker at the request of the wife of the deceased and an autopsy held by a coroner's physician, the wife and the undertaker being present. It was found that death was produced by two stab wounds inflicted by a knife or similar instrument just below the nipple, one of the wounds having penetrated the lungs and the other the liver. The undertaker knew the deceased in his lifetime and the fact was established that the body was that of Antonio Avacato. It cannot, I think, be said that there was any serious defect in the proof of identification. There was ample evidence to warrant the jury in finding that Avacato, the person that the defendant was charged in the indictment with killing, was dead and that the stab wounds already described were the cause of death.

The proof was also sufficient to warrant the jury in finding that these wounds were inflicted by the defendant under such circumstances as to render him criminally responsible for the death. It was shown that on the day named in the indictment the deceased and the defendant and the two brothers of the latter were engaged in playing a game of ball in a yard in the rear of the house No. 319 East 115th street, in the city of New York. It appears that in the course of the game a dispute arose between the deceased and one of defendant's brothers and the latter struck the deceased a blow in the face, from the effects of which he fell to the ground, but apparently was not very seriously injured. In the language of the record he picked himself up, stopped to

brush his hat and left the yard, passing out through the hall-way of the house to the street. In a few moments after-wards the deceased was seen running out of the hallway and down the street, the defendant and his two brothers follow-ing in pursuit. After running about a hundred feet the defendant, who was first in the pursuit, overtook the deceas-ed and, as the proof tended to show, caught him by the col-lar and stabbed him in the chest. Then both fell to the ground, the deceased underneath, face to the ground. The other two brothers of the defendant came up and dropped on the fallen pair, one of them carrying a long stiletto, with which he was seen to strike several times as he came down upon the two combatants This heap of humanity, strug-gling in the street, seems to have dissolved into its original elements in a few seconds. The four persons engaged in the affray seem to have disappeared in an incredibly short space of time, probably from fear of the police, as may be inferred, but just where any of them went from this point does not distinctly appear, except that the defendant was found in a house in bed with two stab wounds in the upper part of each arm, which might have been inflicted by his brother's stiletto. It does not appear that deceased was armed at all or used any weapon. As already stated the movements of the deceased from this time have not been very distinctly traced by the evidence but we do not regard that as very important, since it was shown that the defend-ant had a knife with which the wound could have been inflicted and which he concealed in a neighboring house subsequently.

Without further reference to the evidence, it is quite suffi-cient to say that the proof warranted the jury in finding that the deceased came to his death by violence and that he died of wounds inflicted by the defendant under such circum-stances as to amount to the crime of which he was convic-ted.

When in a case like this there is evidence in support of all the issues incumbent on the People to establish, this court has no power to deal with questions relating solely to the weight or preponderance of evidence. No exception was taken to the charge of the learned trial judge in submitting the case to the jury. The exceptions that appear in the record as taken during the trial do not present any substantial question. It would be difficult to show that any of these rulings of the learned trial judge involve any legal error even when subjected to the strictest and narrowest scrutiny, but if this were otherwise it would be still more difficult to show that any of them were at all prejudicial to the defendant. We have often held that exceptions of much more weight and moment should in the interest of justice be disregarded, under the mandate of section five hundred and forty-two of the Code of Criminal Procedure. We do not think that the record presents any question that would warrant this court in interfering with the judgment, and so it must be affirmed

PARKER, Ch. J., BARTLETT, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgment of conviction affirmed.