THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH FEOLO, ALBERT MASTRONE, NORMAN J. BRABSON and CARL SUMMERFELD, Appellants.

Argued November 20, 1939; reargued January 22, 1940; decided March 5, 1940.

*Samuel Markewich* and *Jerome G. Rosenhaus* for Joseph Feolo, appellant. The trial court's refusal of a separate trial for Feolo deprived him of due process of law and of a fair and impartial trial. (*People* v. *Davis*, 56 N. Y. 95; *People* v. *Storrs*, 207 N. Y. 147; *Logan* v. *United States*, 144 U. S. 263; *People* v. *Doran*, 246 N. Y. 409; *People* v. *Snyder*, 246 N. Y. 491; *People* v. *Fisher*, 249 N. Y. 419.) Reversible error was committed by the trial court when it instructed the jury that Summerfeld's confessions could be considered as against all of the defendants for the purpose of corroborating Funicello's testimony that he refused to participate in the crime. (*People* v. *Cascone*, 185 N. Y. 317.)

*Newman Levy, John Caldwell Myers* and *Donald Peter MacArthur* for Norman J. Brabson, appellant. It was error for the trial court to deny defendant Brabson's motion for a severance. (*People* v. *Snyder*, 246 N. Y. 491.)

*Leo H. Klugherz, Joseph D. Edelson, Frederick J. Sullivan* and *John T. Hogan* for Albert Mastrone, appellant. Funicello was an accomplice as a matter of law. (*People* v. *Clougher*, 246 N. Y. 106; *People* v. *Richardson*, 222 N. Y. 103; *People* v. *Warder*, 231 App. Div. 215; *People* v. *Cohen*, 223 N. Y. 406; *People* v. *Swersky*, 216 N. Y. 471; *People* v. *Zucker*, 20 App. Div. 363; *People* v. *Elbroch*, 250 App. Div. 583; *Luck* v. *State*, 67 S. W. Rep. [2d] 302; *People* v. *Hooghkerk*, 96 N. Y. 149.)

*John McKim Minton, Jr., Irving Mendelson* and *Lawrence J. McManus* for Carl Summerfeld, appellant.

*Thomas E. Dewey, District Attorney (Stanley H. Fuld, Burr F. Coleman* and *Charles W. Manning* of counsel), for respondent. The witness Funicello was not an accomplice. (*People* v. *Cohen*, 223 N. Y. 406; *People* v. *Swersky*, 216 N. Y. 471; *People* v. *Duffy*, 160 App. Div. 385; 212 N. Y. 57.) The motions for separate trials were properly denied and no prejudice resulted therefrom. (*People* v. *Fisher*, 249 N. Y. 419; *People* v. *Doran*, 246 N. Y. 409; *People* v.

*Snyder,* 246 N. Y. 491; *People* v. *Schemnitzer,* 142 Misc. Rep. 16; *People* v. *Gowasky,* 244 N. Y. 451; *People* v. *Barnes,* 202 N. Y. 77; *People* v. *Betson,* 362 Ill. 502.)

LOUGHRAN, J. The four defendants — Feolo, Mastrone, Brabson and Summerfeld — have been convicted of murder in the first degree. The crucial question is whether the trial judge abused his discretion when he denied to Feolo, Mastrone and Brabson a trial disconnected from the issue as against Summerfeld.

Early on the morning of September 14, 1931, three hold-up men entered a speakeasy at 18 East Thirteenth street, Manhattan, city of New York. Two of them drew guns and commanded the proprietor and his patrons to put up their hands. While the third intruder was taking a pocketbook from a patron, Sergeant Timothy Murphy of the city police department entered the premises and, drawing his revolver, demanded to know what was going on there. Shots were fired and the robbers fled. The sergeant had suffered two fatal bullet wounds. A little later, Police Officer Frederick Knocke saw three men running on University place a few blocks away. One of them, when seized by Knocke, shot the officer in the chest and disappeared. Policemen who then searched the neighborhood found in an areaway of premises on East Ninth street near University place a revolver with a sawed-off barrel.

Officer Knocke survived his wounds. Six years later, when the killers of Sergeant Murphy yet remained at large, one Emillio Funicello, then in prison for life as a fourth offender, was at his request given a hearing by the authorities. The indictment and trial of these defendants was the result.

None of the persons who were in the speakeasy at the time identified any of the defendants as one of the hold-up men. At the trial, Officer Knocke singled out Feolo as "a man who looks like the man who shot me." Feolo was sixteen years old when Sergeant Murphy was killed. He made no confession nor any admission tending to show his guilt.

There was evidence of an admission by Mastrone that two weeks before the homicide he had looked over the speakeasy on Thirteenth street in an endeavor to appraise its suitability as a place for a shakedown by means of an impersonation of a Federal officer. But the evidence was that Mastrone also asserted he had not gone near the place again. No other relevant statement was made by Mastrone at any time.

When Brabson was arrested in another State, his brother came to the police station where he was in custody and asked why. " Brabson stated that he was arrested for a holdup and a murder that happened six years ago in New York city, and he thought it blew over." This was the only relevant statement made by Brabson.

In short — except for confessions of Summerfeld, which it will be convenient to pass for the moment — the conviction of the defendants hangs on testimony given against them by Funicello.

This witness introduced himself to the jury as one who began a course of crime by juvenile delinquency in his boyhood and ended it on his conviction of robbery as a fourth offense in 1932. On his direct examination he made specific mention also of his conviction of burglary in Virginia and of his conviction in Pennsylvania of highway robbery and of his escape from prison in both States. On his cross-examination other facts of his personal history were added in this fashion: " Q. You told the District Attorney about your convictions for which you were sent to jail? A. That's right. Q. How many crimes have you committed outside of those? A. Well, in New York City, one on 41st Street, a holdup; one on 50th Street, a holdup, on the Avenue Second Avenue; one on 85th Street between Second and Third; one on 86th Street between Second and Third; 96th Street, between 96th and 95th Street on Broadway; 102nd Street between Second and Third; 116th Street west of Seventh Avenue; 117th Street where St. Nicholas and the other street comes together at; either on 118th or 120th Street east of Lennox Avenue, Democratic Club;

one out in Long Island in '28; one in Coney Island in '31 or '30; and is it a felony for passing counterfeit money? Well, about a thousand in New York State alone."

On the main issue, Funicello's testimony in substance was as follows: He and the defendants were members of a hold-up gang for whom he kept guns behind a removable panel in a hallway wall of an apartment house where he was janitor. On the morning of this crime, Feolo and Brabson came to his janitor's quarters and woke him up. Brabson said: " I just killed a cop." Feolo said: " I think I shot one too." Funicello inquired: " Where did it happen at? " Feolo replied: " Down on 13th street where Al [Mastrone] gave us a tip to." At Feolo's request, Funicello took their guns. When they expressed fear that Summerfeld had been caught, Funicello went with them to an apartment of his niece where Summerfeld came forth and gave to Funicello a like account of the robbery and homicide, adding that he also had shot the officer at the speakeasy.

These narrations, as reported to the jury by Funicello, were circumstantially complete, but the details are not vital. The revolver found by the police near the scene of the crime was identified by Funicello as the property of Mastrone. It had been fired twice. One of Sergeant Murphy's two fatal wounds came from a bullet discharged therefrom.

Funicello openly avowed to the jury that his testimony against the defendants was engendered by his wrath at their failure to aid him when in 1932 he was convicted of felony a fourth time. " Any time a member of the gang is arrested," he said, " the other part of the gang is supposed to help him, and they did not do it for me."

We go now to the confessions of Summerfeld to which passing reference has been made. In their material parts, those confessions completely matched Funicello's testimonial report of what had been said to him by Feolo, Brabson and Summerfeld as to the respective roles of the four defendants in the events of the morning of September 14, 1931. Summerfeld acknowledged that he and Feolo and

Brabson " went in and did the actual stickup." Mastrone, he said, was " the man that fingered the job." Further items may again be passed over. Immediately after he had first confessed, Summerfeld attempted suicide and came pretty close to success. The District Attorney says in his brief: " The uniform consistency with which Funicello's trial testimony tallies in its details with those confessions is cogent proof of its veracity and accuracy." We agree.

We may even suppose that no fair mind could read Funicello's testimony and Summerfeld's confessions conjointly and have left in it any reasonable doubt of the guilt of the four defendants. But it is not for us to adjudge guilt in any case; that is for the jury. The question for us on this record is whether substantial injustice was done to Feolo, Mastrone and Brabson by denial of their motions for separate trials.

When defendants are jointly indicted, the question whether there should be separate trials is addressed primarily to the practical good judgment of a trial judge. In the ordinary case, a ruling directing a joint trial will be on the safe side, though confessions or admissions made by one defendant will not be binding on another. (See *People* v. *Doran*, 246 N. Y. 409; *People* v. *Snyder*, 246 N. Y. 491.) The point at which discretion ends and severance becomes a duty is at times hard to fix. (*People* v. *Fisher*, 249 N. Y. 419.) Here the duty to sever was clear before this trial began, though that is not a controlling consideration now. In *People* v. *Fisher* (*supra*) we said: " A retrospective view by an appellate court may reveal injustice or impairment of substantial rights unseen at the beginning. In a case where, without the existence of a confession by one defendant, the evidence against another would be too weak to justify a conviction or even where a conviction would be doubtful, our review of the judgment would compel us to conclude that an abuse of discretion had been committed. One who makes no confession must be found guilty, if at all, only on proof independent of a confession by a codefendant " (pp. 427–428). To us it is here plain that

without the confessions of Summerfeld, conviction of the other three defendants would have been far from a certainty. On this record, we cannot say, " Cast out the confessions and the result would need to be the same." (*People* v. *Fisher, supra,* p. 426.) Whether Funicello was an accomplice was a question for the jury on any test of that status. His story of antecedent association with Feolo did not go wholly uncontradicted.

True, the jury was charged that Summerfeld's confessions were not valid evidence of the guilt of any of his three codefendants. But the jury was also charged that those confessions were to be considered by them " on the question of whether Funicello was an accomplice or not, because Summerfeld has testified, at least, he in his statement stated that Funicello was not an accomplice." This error makes inadmissible any argument that the confessions of Summerfeld could not have been weighed by the jury against Feolo, Mastrone or Brabson.

As to each of the defendants Feolo, Mastrone and Brabson the judgment of conviction should be reversed and a new trial ordered. As to the defendant Summerfeld, the judgment of conviction should be affirmed.

FINCH, J. (dissenting). I am unable to concur in the conclusion that the verdict of the jury, unanimous as it must be, did not mete out justice to the defendants Feolo, Mastrone and Brabson. Funicello freely admitted on the witness stand his past career and the motive which induced his testimony. The jury were carefully instructed by Judge NOTT, the trial justice, that the confessions of Summerfeld could not be considered against the other defendants. One of the crucial issues for the jury was the truth of the testimony of Funicello. They were not required to disbelieve his testimony. They found it credible, and it is conceded in the majority opinion that his story was true and that the defendants are guilty as charged. Nevertheless, the convictions of all except the one who confessed are about to be set aside. The error claimed is that the

learned trial judge abused his discretion in not ordering a separate trial for those who did not confess. In *People v. Fisher* (249 N. Y. 419) a majority of this court reiterated that the statute concerning severance of trials (Code Crim. Proc. § 391) primarily vested discretion in the trial justice to determine whether defendants jointly indicted should be tried together or separately, and that the Court of Appeals would not substitute its discretion for that of the trial judge, nor interfere unless an abuse of discretion had been committed. In order for us to say that there has been an abuse of discretion, we must not only overturn the assumption that the jury obeyed the instructions of the trial justice, but also that a new jury would disbelieve the testimony of Funicello, which it is now conceded is true. Whatever lingering doubt may still exist as to technical errors would seem to be covered by the direction of the statute (Code Crim. Proc. § 542) that " After hearing the appeal, the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties."

Error is also claimed in connection with a request by counsel for Brabson after the court had completed without error the main charge dealing at length with all aspects of the case. As already noted, the court had fully and correctly charged that the confession of Summerfeld should not be considered against any one other than himself. As to the alleged error, it is sufficient to say that no counsel in the case, including counsel for Brabson, who made the request, deemed the remarks of the trial court, now emphasized as error, of sufficient importance to warrant objection or exception.

*Secondly,* while the failure of any of the defendants to take the stand may not be used against them, there is nothing in this record to contradict the testimony of Funicello that he would have nothing to do with the perpetration of this particular holdup, since neither Mastrone nor Brabson called any witnesses or produced any evidence on his own behalf. Within the authorities, Funicello would

not be an accomplice as a matter of law. In *People* v. *Swersky* (216 N. Y. 471) we said: " To permit a jury to say that he did not join in it, when the only evidence is that he did not, would be to permit them to build their verdict upon speculation and suspicion" (p. 478). Hence, any so-called error becomes immaterial and must be disregarded even if an objection and exception had been taken, particularly in view of the conceded guilt of all of the defendants.

On the one hand there is need for the certain and sure punishment of the guilty as a deterrent to crime inimical to the interests of society and bringing undeserved misfortune to the victim. On the other hand is the fundamental requirement that even the most vicious criminals shall have a fair trial. As between these two stand the courts under a command of law which directs technical errors to be disregarded when they do not interfere with substantial justice.

A reading of this record shows a shocking condition wherein the jury were amply justified in finding a case of felonious crime planned as a business for profit, which resulted in murder.

I vote to affirm the convictions of all four defendants.

LEHMAN, Ch. J., RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur with LOUGHRAN, J.; FINCH, J., dissents in opinion as to Feolo, Mastrone and Brabson, but concurs as to Summerfeld.

Judgment accordingly.