In the Matter of Leo S. SACHAROFF, Petitioner, against MICHAEL J. MURPHY, as Acting Industrial Commissioner of the State of New York, et al., Respondents.

Supreme Court, Special Term, New York County, September 8, 1943.

*Albert Adams* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Theodore D. Ostrow* of counsel), for respondents.

WALTER, J. After a hearing upon notice, at which evidence was taken, a Deputy Industrial Commissioner of the State of New York found that petitioner herein, a physician previously authorized to render medical care under the Workmen's Compensation Law, was guilty of: 1. Participating in division, transference, assignment, rebating, splitting or refunding of fees. 2. Failing and refusing to testify in connection with an investigation conducted by another Deputy Commissioner on another occasion. The first, he said, was a violation of paragraph (e) of subdivision 2 of section 13-d of the Workmen's Compensation Law, and the second, he said, was misconduct

in violation of paragraph (a) of subdivision 2 of section 13-d. Petitioner's authorization to render medical care under that law was therefore revoked, and petitioner brings this proceeding to review and vacate such revocation. He contends, first, that there was no competent proof that he in fact participated in splitting or refunding fees; second, that such splitting or refunding as the Commissioner found was not the splitting or refunding of " a fee for medical care " within the meaning of paragraph (e) of subdivision 2 of section 13-d; and, third, that his refusal to testify in the prior investigation was not " misconduct " within the meaning of paragraph (a) of subdivision 2 of said section 13-d.

A preliminary question arises, however, as to whether the claim that there was no competent proof of the fact of fee-splitting makes it necessary to transfer the case to the Appellate Division for hearing by it; and that question, although apparently merely one of practice, raises two substantial questions of considerable importance: 1. Did petitioner have a statutory right to a hearing? 2. If not, is he entitled to a judicial review of the legal competence of the evidence adduced against him?

Section 1296 of the Civil Practice Act specifies seven questions as the only ones involving the merits which can be determined in a proceeding in this court against a body or officer exercising judicial, quasi-judicial or administrative or corporate functions. After first enumerating five questions it provides: " Where the determination under review was made as the result of a hearing held, and at which evidence was taken, pursuant to statutory direction, the following questions shall also be determined." Then there follows the enumeration of the sixth and seventh questions, the sixth being " Whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination." The section further provides that where only one or more of the first five issues are raised the court to which the application for relief is made shall itself dispose of the cause on the merits, and that " Where one of the other two issues is raised, the court shall make an order directing that the proceedings be transferred for disposition to a term of the appellate division held within the judicial department embracing the county in which the proceeding is instituted."

It is entirely clear that the direction that the sixth and seventh questions " shall also be determined " is applicable only where the hearing was had " pursuant to statutory direction ". If

a hearing has been accorded as a favor only, and not pursuant to statutory direction, there is no requirement that the question whether there was any competent proof shall be determined. But what is meant by the provision that where that question is "raised" the court shall order the proceeding transferred to the Appellate Division? Does that mean wherever a party to the proceeding in fact makes the contention that there was no competent proof? Or does it mean only when the section's direction that such question shall be determined is applicable, i.e., where the hearing was had pursuant to statutory direction? If the former be the correct meaning then transfer or non-transfer depends upon the act of the parties in making or not making a certain contention, whereas if the latter be the correct meaning then transfer or nontransfer depends upon the nature of the proceeding as being one to review a determination made as the result of a hearing pursuant to statutory direction.

The consequences of a decision one way or another as to the correct meaning of the word "raised" as so used in section 1296 are more fundamental and far-reaching than might appear at first blush, for as I view it the question is, not merely whether the Appellate Division makes the review in the first instance or this court makes it subject to a later appeal to the Appellate Division, but whether a party affected by a determination made as a result of a hearing *not* held pursuant to statutory direction has any right to any review at all of the question whether there was competent proof of all the facts necessary to be proved in order to authorize the determination. The result thus may be that if the hearing which was accorded petitioner was not held pursuant to statutory direction, then he cannot question the existence of any competent proof. That, of course, would not mean that he is entitled to no judicial review at all of the action of the Commissioner, but it would mean that he could successfully review it only by showing that it was arbitrary and capricious as distinguished from showing merely an absence of legal evidence.

Article 78 of the Civil Practice Act, under which proceedings of this sort are brought and which contains section 1296 above referred to, was enacted to provide a uniform and simplified method of obtaining at least three entirely different kinds of relief from at least three entirely different kinds of acts by boards and officers exercising judicial, quasi-judicial, and administrative functions; but just as the abolition of forms of action nearly a century ago has not eliminated the substantial differ-

ences between actions at law and suits in equity, so, too, the great procedural reform accomplished by the enactment of article 78 has not abolished substantial differences arising out of different substantive rights. Judicial action and administrative action are still two different things which cannot be put in the same mould; and the necessity for avoiding undue judicial interference with administrative discretion and at the same time protecting individuals from unauthorized administrative action still makes it necessary to make sharp distinctions between things which are essentially unlike although having similarities which sometimes lead the unthinking to regard them as the same. The fact that many businesses, professions and occupations have been brought by the State under some form of administrative control does not mean that all are or should be controlled in the same way or to the same extent. I think it safely may be said that no citizen in respect of any of his substantive rights is outside the pale of judicial protection from arbitrary or capricious action on the part of administrative officers. I think, too, that administrative action taken without some basis which would lead a reasonable and honest man to such action is to be regarded as arbitrary and capricious. But it does not follow that no administrative action by such officers can be taken except upon such legal evidence as would justify a finding of fact in a judicial proceeding before a judge or jury. Within constitutional limits, it is for the Legislature to prescribe in what instances administrative officers may act upon their own knowledge or their own investigations and in what instances they must act only upon competent legal evidence, and, within like limits, it is for the Legislature to say in what instances and in what manner their acts are to be judicially reviewed.

These considerations — stated at greater length, perhaps, than their elementary nature requires or justifies — seem to me to demonstrate that the enumeration of questions in section 1296, far from being either formal or technical, is the result of careful discrimination as to the nature of the substantive rights to be protected, and that the line of demarkation there drawn with respect to the questions open for determination by the court in a proceeding brought under article 78 may be stated thus: Where the Legislature has directed that a hearing upon evidence shall precede a determination by a body or officer, the party affected by such determination is entitled to have the same rest upon competent proof, and therefore is entitled to a judicial review of the question whether there

is competent proof of all the facts necessary to be proved in order to authorize the making of the determination; but where the Legislature has not directed that a hearing upon evidence shall precede a determination by a body or officer, the party affected by such determination is not entitled to have the same rest upon competent proof, and therefore is not entitled to a judicial review of the question whether it does in fact rest upon such proof.

I hence conclude that the provision for transfer to the Appellate Division when the issue of the existence of competent proof is " raised " means, not that the proceeding must be transferred whenever a party to the proceeding does in fact advance the contention that there is no competent proof, but that such transfer is to be ordered only in those cases in which the party affected by the determination is entitled to raise that contention by reason of the fact that the Legislature has provided that a hearing upon evidence shall precede the determination of the body or officer.

Whether or not this proceeding should be transferred to the Appellate Division, and also whether or not petitioner is entitled to raise the contention that there is no competent proof authorizing the determination, thus both depend upon whether or not the Workmen's Compensation Law directs that before the Commissioner can revoke a physician's authorization to render medical care under that law there shall be a hearing upon evidence. If it does not, then the proceeding is not to be transferred and petitioner's review is confined to the first five questions specified in section 1296.

Subdivision 2 of section 13-d of the Workmen's Compensation Law provides that the Commissioner shall remove from the list of physicians authorized to render medical care under that Law the name of any physician who he shall find " after reasonable investigation " is disqualified because such physician has done or failed to do any of six things there enumerated, one of which is that the physician has been guilty of " professional or other misconduct " and another of which is that the physician has participated in the division, transference, assignment, rebating, splitting or refunding of " a fee for medical care under this chapter ". The words " reasonable investigation " do not ordinarily import a hearing. They more generally are used in analogous enactments in contradistinction to a hearing. If subdivision 2 stood alone it thus would be quite clear that there is no statutory direction for a hearing. But subdivision 2 does not stand alone. Subdivision 1 of the same section provides that

the medical society or board therein mentioned " shall investigate, hear and determine all charges of professional or other misconduct by any authorized physician " and report evidence of such misconduct, with their determination thereon, to the Commissioner; that the Industrial Council may review such determination and must do so on application of the physician accused; and that the decision and recommendation of the Industrial Council shall be final, binding and conclusive upon the Commissioner.

There thus are two provisions covering " professional or other misconduct ", one of which explicitly provides that a medical society or board shall hear all charges thereof and determine the same upon evidence and gives the accused physician an absolute right of review by the Industrial Council, the decision of which is made binding upon the Commissioner, and the other of which, if read according to the usual import of its words, gives the Commissioner a right to revoke the physician's authorization upon his own finding of misconduct upon his own investigation without any hearing before anyone and without any review by the Industrial Council.

When confronted with such inconsistencies in particular provisions of a statute the court must view the statute as a whole, and consider its scheme and history and purpose in an effort to find the legislative intent, and then harmonize the inconsistencies in such way as to carry out that intent, even to the extent, if necessary, of disregarding specific provisions which are inconsistent with what appears to be the dominant intent.

The requirement that duly licensed physicians must be specifically authorized by the Commissioner to be able to render medical care to injured employees coming within the scope of the Workmen's Compensation Law was introduced into the law by chapter 258 of the Laws of 1935, which was the enactment of a bill embodying the joint recommendations of the State Industrial Commissioner and a committee appointed by the Governor from the membership of accredited local medical societies after such committee had investigated the subject of medical care of such employees. (*Szold* v. *Outlet Embroidery Supply Co.*, 274 N. Y. 271, 276.) To obtain such an authorization a physician must make application to the medical society of the county in which he has his office and obtain its recommendation, or the recommendation of the Industrial Council — a body created to " advise " the Commissioner and including in its membership five physicians appointed by the Governor (Labor Law, § 10-a, amd. L. 1935, ch. 258) — if he claim that the society

improperly has refused recommendation (Workmen's Compensation Law, § 13-b). The Act also provides for the licensing of medical bureaus and laboratories by the Commissioner upon similar recommendations (Workmen's Compensation Law, § 13-b, subd. 3; § 13-c), and also for the revocation of such licenses (§ 13-e, amd. L. 1941, ch. 307).

According to their respective headings, section 13-d of the Workmen's Compensation Law covers the subject of revocation of the authorization of physicians and section 13-e covers the subject of revocation of the licenses of medical bureaus. In fact, however, both sections, as originally enacted, contained provisions relating to both subjects. The requirement of subdivision 1 of section 13-d that all charges of misconduct be heard by a medical society or board extended to both physicians and medical bureaus, and section 13-e contained a provision that such medical society or board, upon direction of the Commissioner or upon its initiative, may investigate the alleged disqualification of any physician or the alleged grounds for revocation of the license of any medical bureau, and specifically required notice and a hearing upon evidence. Moreover, as originally enacted, section 13-e gave the Commissioner no power to revoke the license of a medical bureau except upon a finding certified to him by a medical society or board or by the Industrial Council. By an amendment in 1941 (L. 1941, ch. 307) the reference to medical bureaus in section 13-d and the reference to physicians in section 13-e were stricken out (the content of the sections being thus brought into conformity with their respective headings) and there was inserted in section 13-e a provision which, at least apparently, gives to the Commissioner an independent power to revoke the license of a bureau, but only after a hearing.*

Considering the fact that physicians get their authorization to render medical care in compensation cases, not upon the independent action of the Commissioner alone but only upon the recommendation of a medical society or board or of the Industrial Council, considering the fact that one provision of the statute explicitly requires a hearing of all charges of misconduct before a medical society or board with a right of review before the Industrial Council, considering the fact that there is not even an arguable contention that the Commissioner can revoke the license of a medical bureau without a hearing, and

* I say "at least apparently" because the construction of the amended section is not entirely free from doubt and its construction should not be definitely undertaken except in a case directly involving a medical bureau.

considering the fact that revocation implies misconduct on the part of a physician, it seems to me to be entirely inconsistent with the scheme, history, and purpose of the statute to say that the Legislature intended that the authorizations of physicians can be revoked by the independent action of the Commissioner alone upon his own investigation without a hearing.

The problem here presented is not solved, however, by the simple device of saying that the words " reasonable investigation " in subdivision 2 of section 13-d can be here read as meaning a hearing. On the contrary, an adoption of that reading merely creates more problems, and I therefore am not at liberty to stop there. (Compare *Smith* v. *Cahoon,* 283 U. S. 553, 564, 565.) So read, subdivision 2 authorizes a hearing of charges of misconduct before the Commissioner and revocation of authorization upon his own finding of guilt, and thus is brought into direct conflict with the explicit provision of subdivision 1 that *all* charges of misconduct shall be heard before a medical society or board with a right of review before the Industrial Council. Can that conflict, then, be resolved by reading the words " all charges " in subdivision 1 as meaning " some charges ", or, more explicitly, as meaning " all charges except such as are heard before the Industrial Commissioner as provided in subdivision 2 hereof "? It seems to me it cannot. To resolve the conflict in that way is to cause the statute to provide for two different procedures for revocation of a physician's authorization without saying who is to determine which procedure is to be followed in the case of any particular physician and without the laying down of any standard or criterion by which selection of one procedure or the other is to be guided. The authorizations of different physicians differ as respects the types of medical care they are authorized to render, but as respects revocation of their authorizations all physicians who have received authorizations constitute a single class, and it seems to me that it would be a violation of the constitutional guarantee of the equal protection of the laws (U. S. Const. 14th Amendt. § 1; N. Y. Const. art. I, § 11) to say that charges of misconduct against certain undetermined and legally undeterminable members of the class are to be heard before a medical society or board with a right of review before the Industrial Council, while similar charges against other undetermined and legally undeterminable members of the same class may be heard before the Commissioner alone without any right of review before the Industrial Council. (*Power Co.* v. *Saunders,* 274 U. S. 490, 495, and cases there cited; *Norris* v. *Alabama,* 294 U. S. 587, 589;

*Hill* v. *Texas,* 316 U. S. 400, 406; *Commissioner of Public Welfare* v. *Torres,* 263 App. Div. 19.) The rendition of medical care to injured employees doubtless must be denominated as a privilege rather than as a right of the physician, but nevertheless withdrawal of the privilege " is in effect a consequence most severe, and partakes of the nature of punishment " (compare *Matter of Donegan,* 282 N. Y. 283, 292, and *Matter of Bender* v. *Board of Regents,* 262 App. Div. 627, 631), and procedural discriminations which would be unconstitutional in civil actions and criminal prosecutions cannot be sustained in proceedings for the withdrawal of the privilege merely because they are for the withdrawal of a privilege only.

When it is possible to do so, it is the duty of courts to construe statutes in a way which will render them constitutional rather than unconstitutional, and also to construe them in such a way as to avoid serious doubts as to their constitutionality (*United States* v. *Delaware & Hudson Co.,* 213 U. S. 366, 407, 408; *Panama R. R. Co.* v. *Johnson,* 264 U. S. 375, 390; *Hopkins Savings Assn.* v. *Cleary,* 296 U. S. 315, 334), and to that end, and also in order to give effect to the direction that the decisions of the Industrial Council shall be binding and conclusive upon the Commissioner — a direction specifically set forth in subdivision 1 of section 13-d of the Workmen's Compensation Law and also in section 10-a of the Labor Law — I am impelled to construe subdivision 2 of section 13-d as subject to and dependent upon subdivision 1 of the same section; that is, as providing that the Commissioner shall remove from the list of physicians authorized to render medical care the name of any physician who he shall find *from a decision or recommendation of the Industrial Council or from the evidence upon a hearing had as provided in subdivision 1* is disqualified because such physician has been guilty of one or more of the things thereinafter specified.

I do not overlook the fact that some such argument as the following might be made: Subdivision 1 deals only with " professional or other misconduct "; subdivision 2, while also dealing with that subject, separately enumerates five additional grounds for revocation of a physician's authorization, and, although those five additional grounds reasonably may be thought to be nothing more than specific instances of misconduct, the fact remains that fee-splitting is separately mentioned, and perhaps the Legislature intended to guard against the possibility of a medical society or board concluding that fee-splitting is not misconduct by giving the Commissioner an independent

power to revoke a physician's authorization because of fee-splitting. That argument, in my opinion, cannot disturb the conclusion I have just stated. Without considering the relation of fee-splitting to misconduct, as an independent question, the argument is answered by the consideration that under my construction of the statute the Commissioner may charge a physician with fee-splitting, and where such charge is made the medical society or board must hear and determine it upon evidence, and if the society or board find the charge to be true in fact the Commissioner may then revoke the authorization regardless of whether the society or board find that fee-splitting is misconduct or not. What the Commissioner's power would be if the Industrial Council — a public body consisting of physicians and nonphysicians appointed by the Governor and including the Commissioner himself — should say that fee-splitting is not misconduct may well be left to be determined if and when the Council in fact so says.

Upon the arguments before me it was stated that charges are pending or in contemplation against a large number of physicians, all based upon a rebate or splitting of fees similar to that charged against petitioner, and it was urged that disposition of the charges will be greatly facilitated if some can be heard before the Commissioner and some be heard before a medical society or board. The extent to which courts can allow a consideration of consequences to guide their decisions is limited, but I may make the observation that if it be true, as intimated, that there are certain questions of fact common to all the charges, I can perceive no reason why all physicians affected by such questions of fact cannot be grouped in a single proceeding upon the hearing of which the witnesses testifying to such common questions of fact could give their evidence once, instead of being called to give the same testimony over and over again upon separate hearings. The fact that each accused physician is entitled to cross-examine does not mean that each one is entitled to a separate direct examination. Consolidation of actions, joint trials, and the joinder of numerous plaintiffs and defendants in cases presenting common questions are now familiar in court procedure (Civ. Prac. Act, §§ 96, 96-a, 97, 209, 211, 212; *Akely* v. *Kinnicutt*, 238 N. Y. 466), and I can perceive no reason why similar timesaving devices may not be utilized in the hearing of charges against authorized physicians. I thus see nothing in my construction of the statute which makes its enforcement burdensome or cumbersome.

If my conclusion were that the determination of the Commissioner, which petitioner here seeks to review, was made '' as the result of a hearing held, and at which evidence was taken, pursuant to statutory direction,'' it would be my duty, as stated at the outset, to transfer the case to the Appellate Division, but while I hold that the statute requires a hearing I further hold that the hearing which was had was not such a hearing as the statute directs, inasmuch as it was had before the Commissioner instead of before a medical society or board. It therefore follows that respondents were without jurisdiction of the subject matter and did not pursue their authority in the mode required by law and violated applicable rules of law to the prejudice of petitioner (Civ. Prac. Act, § 1296, subdivision questions 3, 4, 5), and I accordingly must annul their determination, without passing upon the guilt or innocence of petitioner and without prejudice, of course, to a new hearing of the charges against him in the manner provided by law, and without costs.

I have examined the record of the proceedings had before the Deputy Commissioner, and as petitioner's challenge is directed not to the truth but to the legal sufficiency of what the witnesses said, I am satisfied that no substantial right of petitioner will be adversely affected if upon the new hearing the medical society or board does not see and hear the witnesses who testified before the Deputy Commissioner. I am consequently of the opinion that the provision of section 1295 of the Civil Practice Act that the court shall render '' such final order as the case requires '', and the provision of section 1300 that the court shall grant petitioner '' the relief to which it deems he is entitled,'' are broad enough to enable me to direct that the new hearing be had upon the evidence already taken before the Deputy Commissioner, supplemented by such additional evidence as either party shall offer and the society or board shall receive. Such direction accordingly will be made if desired by respondents; but if respondents should elect to include petitioner in a new omnibus proceeding against other physicians also, it will of course be impossible to use the evidence already taken in petitioner's case against other physicians who have not yet had an opportunity to cross-examine the witnesses who gave such evidence.

Determination annulled upon the conditions stated. Settle final order accordingly.