■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. THOMAS LA RUFFA, Appellant. — Appeal from a judgment of the County Court, Kings County, convicting appellant of murder in the second degree, and from intermediate orders, including an order denying a motion for a separate trial and an order denying a motion to set aside the verdict and for a new trial. Over objections by La Ruffa's attorney there were received in evidence statements made by his codefendant Gioiosa, in which Gioiosa attempted to exculpate himself, and accused La Ruffa of the murder of one Sorrentino, the crime of which both Gioiosa and La Ruffa were accused. This evidence was received as against Gioiosa only. La Ruffa, whose motion for a separate trial had been denied and who had made no confession to the authorities, testified in his own behalf, and denied that he had had any connection with the crime. Without the introduction into evidence of these statements made by Gioiosa, and unless they had been considered by the jury as evidence against La Ruffa, it is at least doubtful that the evidence against La Ruffa would have been sufficient to convince the jury of his guilt beyond a reasonable doubt. While ordinarily the question whether there should be separate trials of defendants, jointly indicted, is addressed to the sound discretion of the Trial Judge, it should have been apparent to the district attorney in this case, at the outset, that a joint trial of Gioiosa and La Ruffa would impair La Ruffa's substantial rights and prevent a fair trial of the case against him. However that may be, it is now apparent, on a reading of the record, that without the so-called confessions by Gioiosa, La Ruffa's conviction would have been far from a certainty, and that the denial of a separate trial to La Ruffa resulted in a substantial injustice to him. (Cf. People v. Feolo, 282 N. Y. 276.) If this were not sufficient, the receipt of the testimony of the witness Marie Cook as to her conversation with Gioiosa was entirely improper, and seriously prejudiced La Ruffa's right to a fair trial. In her testimony as to this conversation, when she and Gioiosa were together in an automobile, and when La Ruffa was not in the automobile or present, the witness Cook stated that Gioiosa, in answer to her question as to who murdered Sorrentino, gave her the name of a certain person who was not in the automobile or present. Although La Ruffa's name was not mentioned and this evidence was purportedly received against Gioiosa only, there could have been no doubt in the minds of the jurors in the light of other testimony received, that the name mentioned by Gioiosa to the witness Cook was that of La Ruffa, and it is difficult to understand the purpose of the introduction of this evidence, if it was not to get before the jury this hearsay evidence as to La Ruffa's guilt. That purpose is further indicated in the summation of the assistant district attorney, in which he referred to this testimony by the witness Cook, as evidence that Gioiosa had said to Cook "La Ruffa killed him." Under the circumstances, we are unable to say that the errors complained of did not violate

La Ruffa's substantial rights, or that they may be disregarded under section 542 of the Code of Criminal Procedure. Judgment reversed on the law and the facts and a new trial ordered. No separate appeal lies from the intermediate orders, which have been reviewed on the appeal from the judgment of conviction. Nolan, P. J., Wenzel and Ughetta, JJ., concur; Murphy and Hallinan, JJ., dissent and vote to affirm the judgment of conviction, with the following memorandum: Marie Cook, then 17 years old, testified that on the night of August 4, 1951 at the behest of Gioiosa and La Ruffa, who gave her a false reason, she had lured decedent from a saloon known as the Casino Tavern and into taking her as passenger in his automobile; by prearrangement, Gioiosa and La Ruffa followed and parked behind decedent's car; Gioiosa decoyed decedent from his automobile by representing himself as a policeman and demanding decedent's license; La Ruffa approached from the rear automobile; Gioiosa and La Ruffa assaulted decedent, whereupon Cook heard shots and later saw decedent's body, which was discovered the following morning behind his automobile. In the left hand of decedent, who had been severely beaten and then shot to death, were his automobile operator's license and a flashlight. It was established that five shots had been fired from the same gun. The photographs as of discovery show that the opened and unopened doors of decedent's car tally with Cook's testimony. Her testimony that from outside the Casino, La Ruffa, accompanied by Gioiosa, pointed out the decedent to her, is corroborated by a witness who stated that he had seen La Ruffa and another man approach the Casino and then turn and walk away. La Ruffa admitted his presence at the Casino and, in further conformity with other proof of the prosecution, that by telephone he had made an appointment that evening with decedent to meet shortly thereafter at the Casino. A telephone call had been made by either Gioiosa or La Ruffa from another saloon, called the Blue Mirror Bar & Grill, according to Cook, shortly before the journey to decoy decedent. La Ruffa denied that he had been accompanied by another man. He denied in part the testimony of a detective that La Ruffa had told him one Cutrone had accompanied La Ruffa to the corner at which the saloon was located. La Ruffa, a prior offender with no regular employment, owed a gambling debt to decedent, who had been pressing for payment. Two witnesses for the prosecution testified that on the afternoon preceding the murder they had accompanied La Ruffa to a meeting with decedent, during which trip La Ruffa was advised by Cutrone to "take the clip out", apparently referring to a gun. These two witnesses testified to a violent dispute between La Ruffa and decedent. La Ruffa testified that it was an amicable meeting; according to a detective, La Ruffa had denied that anyone had accompanied him other than Cutrone, who did not testify. Also in contradiction of the two witnesses, La Ruffa testified that previously on the same day they had accompanied him to Cook's home for the purpose of recovering a rented car which Gioiosa had not returned. It was shown that the car had been returned about a week prior thereto. La Ruffa then changed his testimony to the effect that the visit was for the purpose of obtaining money. After discovery of the body, La Ruffa requested these two witnesses, according to them, to tell the police, if inquiry was made, that they did not know him. Previously, these witnesses testified, upon meeting La Ruffa at a time when they did not know of the murder, he told them not to stop and that he had a lawyer. La Ruffa testified at odds with testimony of Cook and her mother that he had seen Cook on but one occasion. He denied statements attributed to him by a detective as to his activities on the night of the murder. His alibi testimony is at odds with statements attributed to him by the detective. Throughout the course of the trial the court scrupulously admonished the jury as to

the effect of testimony which was not binding on one or the other of defendants. The charge was explicit on that subject. There was no abuse of discretion in conducting a joint trial (Code Crim. Pro., § 391). The defenses were not antagonistic (cf. *People* v. *Snyder*, 246 N. Y. 491). The fact that admissions of Gioiosa involved La Ruffa did not require separate trials (*People* v. *Doran*, 246 N. Y. 409, 425). No error was committed, as in *People* v. *Feolo* (282 N. Y. 276, 281, 282), by charging that the confession of one defendant was binding on the other. Cook's testimony that Gioiosa admitted that La Ruffa fired the shots was properly allowed as binding only on Gioiosa, as the court charged. As to Gioiosa, the proof eliminated the possibility that the bullets had come from some source other than from him or La Ruffa. It did not matter which of them pressed the trigger (*People* v. *Emieleta*, 238 N. Y. 158; *People* v. *Lagroppo*, 90 App. Div. 219, affd. 179 N. Y. 126; *People* v. *Pennise*, 281 App. Div. 839, affd. 305 N. Y. 862). The evidence was cumulative in that it was part of other admissions of Gioiosa. The proof of guilt of La Ruffa, adduced at a lengthy and fair trial, was convincing.