See also, D.C., 167 F.Supp. 619.

**UNITED STATES of America ex rel. Norman BRABSON, Petitioner,**

**v.**

**Harry SILBERGLITT, Warden, City Prison, Respondent.**

United States District Court
S. D. New York.

March 31, 1960.

Alan G. Weiler, Deputy Asst. Atty. Gen., Louis J. Lefkowitz, Atty. Gen., for respondent.

MacMAHON, District Judge.

This is a petition for a writ of habeas corpus under 28 U.S.C.A. § 2254. Petitioner, Brabson, is a prisoner of New York State serving a life sentence for murder in the first degree. He was convicted twenty years ago in the Court of General Sessions. He asserts that his conviction resulted from the knowing use of perjury by the prosecution in that the principal witness for the people, an informer named Funicello, testified falsely that he had not been promised special consideration for testifying for the people.

In support of this charge, petitioner relies on the record of his conviction and the fact that, after the conviction was affirmed by the Court of Appeals, Funicello's life sentence was commuted to life parole in 1943 by then Governor Dewey. The Governor had acted in part on recommendation of the New York County District Attorney that Funicello be rewarded for his invaluable services to the people in furnishing information and in cooperating with the authorities to bring petitioner and his co-defendants to justice for their vicious crimes.

In the instant proceeding, the Attorney General of the State of New York submitted an affidavit conceding that petitioner has exhausted the remedies available to him for collateral attack upon his conviction under the law of New York. The reply affidavit shows also that eight years ago, in 1952, petitioner unsuccessfully challenged his conviction by a coram nobis proceeding in the Court of General Sessions where he relied on charges which, though broader, included the same charge now leveled.

Petitioner does not contend that the hearing he received on the State coram nobis proceeding was in any way unfair. This alone is sufficient reason for dismissing this petition without a hearing, provided the same issues of fact now raised were considered by the State Court. "As no impropriety is alleged as to this [State Court] hearing, relator has no right to a renewed opportunity to test these same facts." United States ex rel. Blank v. Jackson, 2 Cir., 1959, 263 F.2d 185. The serious nature of the charge and the extraordinary historical facts surrounding petitioner's conviction, however, preclude such cursory disposition and call for deeper scrutiny of the record. Napue v. People of State of Illinois, 1959, 360 U.S. 264, 271, 79 S.Ct. 1173, 3 L.Ed.2d 1217.

I am satisfied from an independent examination of the voluminous records involved that the petitioner has had his day in Court on the very issues raised here and that his Constitutional rights have been meticulously protected. This is clear from the summary of the historical facts which follows.

On September 14, 1931 three armed men held up a speakeasy at 18 E. 13th Street, Manhattan. They were interrupted by Sergeant Timothy Murphy, who was shot and killed. The murderers fled and for six years their identity was unknown. In June, 1937, Funicello, then serving a life term as a fourth felony offender, told the authorities he had information about the crime and thereafter revealed the identity of the gunmen as Summerfield, Feolo and Brabson, the petitioner. He also named a fourth, Mastrone, as the instigator of the crime. All were arrested and charged with murder.

The first trial in 1938 resulted in a disagreement. A second trial resulted in a conviction for felony murder which the New York Court of Appeals affirmed as to Summerfield, who had confessed, but reversed as to Feolo, petitioner and Mastrone. People v. Feolo, 1940, 282 N.Y. 276, 26 N.E.2d 256.

Upon the third trial in June, 1940, petitioner, Feolo and Mastrone were convicted. The informer, Funicello, was the chief witness for the prosecution and, as the trial judge put it, "without his testimony there would be no case made out

against these defendants or any of them."

Funicello testified that he was a member of the "gang" and was present when the defendants planned the holdup, but had refused to go along because the speakeasy was below the "deadline". He identified the guns used as having once been among others cached by him behind a panel in his home. The defendants, he swore, came to his apartment immediately after the crime and admitted killing a "cop". His credibility and status as an accomplice were the central issues on all three trials. He was subjected to skillful and gruelling cross-examination by all defense counsel during which he admitted that he had committed a thousand crimes, was a "rat", had once committed perjury and was testifying against the defendants, particularly petitioner, out of revenge. He steadfastly denied, however, that he "expected" to have his sentence commuted or to receive any "time off for testifying".[1]

The summations of both the prosecution and the defense emphasized that Funicello's credibility was the pith of the case. Able counsel for the defendants hammered at his credibility with consummate skill. They pointed to evidence that, prior to his testimony, Funicello had first been removed by the authorities from Dannemora to less strict Sing Sing, and from there to the Bronx County Jail, where for the past two years he had enjoyed such privileges as frequent visits by relatives. They pointed to his testimony that he ate lunch in the District Attorney's office during the trial while the jury had to search for a restaurant in the neighborhood. It was obvious, they argued, that this loathsome informer, habitual criminal and avowed avenger had made a deal with the authorities. The prosecutor's forthright answer to this, during his summation, is set forth in the margin.[2] The trial court commented, however, "he may expect every sort of consideration from his testimony, I don't know what is in the mind of Funicello, and you don't either, but there is nothing in the record to show that the District Attorney offered him any inducement."

The trial judge left the issue of Funicello's credibility to the jury on instructions that were fully adequate. It is plain from the testimony, the summations, and the Court's comments that the trial jury knew of Funicello's hope for reward. Juries are not so naive as to

---

1. Record on Appeal, pp. 200, 201, People v. Feolo, 1940, 282 N.Y. 276, 26 N.E.2d 256.

2. " * * * They tell you that Funicello would like to get out of jail. I don't doubt that he would, but if that is his purpose and he does want to get out of jail, he does want the Parole Board to parole him, if in the judgment and the opinion of the Parole Board he should be, or if he has any idea that the Governor may commute his sentence, then it seems to me that he would tell the truth in order to serve and accomplish that purpose; because if he has any chance, if he has a chance at all to get out of jail— and I believe I am correct in saying that he can only accomplish that through action of the Parole Board or the Governor —then it could only be by his telling the truth. And I will show you why.

"Let me say this before I point out why. I already told you on Friday that Funicello testified that he received no promise, and I already told you that if I knew of the existence of such a promise I could not sit by here and permit him to tell you that no such promise was made. But if his purpose is to get out of jail and he, in his own mind, expects to receive some consideration for the assistance which he is rendering to the State, then doesn't it stand to reason that he could not expect such consideration except by telling the truth? Because if the Governor or the Parole Board considered Funicello's case at all, isn't the first thing that they would naturally be interested in, in addition to his previous record and background, whether or not Funicello testified truthfully or committed perjury? Isn't that what the Parole Board or the Governor would be interested in? I should think they would be.

"Did Funicello tell the truth? I say to you that in order to accomplish that purpose he could accomplish it best by telling you the truth. * * * " (Record on Appeal, pp. 732–3, People v. Feolo, 1940, 282 N.Y. 276, 26 N.E.2d 256.)

disregard such hopes in weighing the credibility of an informer. Clearly, the trial jury gave due weight to that fact and resolved the issue in favor of Funicello's credibility.

Funicello's status as an accomplice was also left to the jury, and since there was no way of telling how the jury had resolved that issue, the Court of Appeals assumed that the jury had found that Funicello was an accomplice. His testimony, therefore, required corroboration under New York law (Code of Crim. Proc. § 399). Reviewing the evidence, the Court of Appeals held in a split opinion (four-to-three) that there was sufficient corroborative evidence to sustain the conviction as to petitioner but not as to the others. People v. Feolo, 1940, 284 N.Y. 381, 385, 31 N.E.2d 496. Later, on recommendation of the New York County District Attorney, petitioner's death sentence was commuted to life imprisonment by the Governor.

Twelve years after the affirmance of his conviction, petitioner applied in 1952 for a writ of error coram nobis in the Court of General Sessions, New York County. There, as here, he alleged that the prosecution knowingly used perjured testimony by Funicello.[3] Hearings were held before Hon. Harold A. Stevens for six days, during which petitioner and fourteen witnesses testified and numerous exhibits were received in evidence. Petitioner was represented by counsel and allowed to call any and all witnesses he desired, including Funicello, as well as the former Assistant District Attorney who had been in charge of his prosecution. In support of his charge of the prosecution's knowing use of perjury, petitioner offered his own testimony, but his credibility was seriously impaired by his own prior inconsistent statements. He also offered the testimony of two convicts with long criminal records. Both testified that their onetime fellow inmate, Funicello, had told them that he

had "framed" Brabson for revenge and that the District Attorney knew he had lied. On cross-examination, their testimony was discredited by showing that their direct testimony as to dates of the conversations with Funicello did not square with the dates set forth in their affidavits, nor with the dates when Funicello was confined in the same prison with either of them. As proof that Funicello had been promised special consideration, petitioner pointed to the fact that Funicello had been removed from Sing Sing Prison to the Bronx County Jail where he was allowed to have his children visit him about once a week and was given $3 a week in vouchered funds by the District Attorney's office for cigarettes, toilet articles, etc. Other evidence, however, showed that the cigarette money was in lieu of money Funicello or any other inmate would have earned in Sing Sing.

Although he was represented by counsel on the coram nobis hearing, Brabson was allowed personally to cross-examine Funicello and others. The Court treated him with the utmost courtesy, inexhaustible patience, and allowed the widest latitude of interrogation free from the restrictive rules of evidence. Funicello reaffirmed that he had been actuated by revenge and denied that he received any promise that his sentence would be commuted. The principal prosecutor in charge of petitioner's third trial testified that he did not remember any promises being made, although he admitted that there had been some discussion about Funicello's assistance to the people being presented to the proper authorities at some future time. He further testified that no specific promises were made because this was something which was in the hands of the Governor. Another Assistant District Attorney testified that Funicello "was specifically told he could not expect anything, that we could promise him nothing."

3. Petitioner also claimed that the prosecution had suppressed evidence consisting of hotel records which would have established an alibi that petitioner was in Pittsburgh at the time of the murder.

At the close of the hearings, the Court stated that no evidence of perjury had been shown and declined to infer from the subsequent commutation of Funicello's sentence that he had been promised such treatment before testifying.[4]

In refusing to draw such an inference, the State Court was plainly right, for it by no means follows from the action of the District Attorney in recommending the subsequent commutation of Funicello's sentence that any promise was made to him before he testified. Commenting on similar proof, in United States v. Aviles, 2 Cir., 1960, 274 F.2d 179, 191, the Court said:

"*  *  *  It does not follow from the action of the United States Attorney and the action of the Governor that any promise was made to the witness. It is a well understood practice for the prosecutor and the chief executive concerned to give appropriate consideration to witnesses who have assisted the government. The witnesses concerned are aware that this is so; the jurors and the general public are also aware of this practice. The purpose of the government is to encourage witnesses to tell what they know; that may be accomplished without prior promise in a particular case. Consequently we do not conclude from the fact of the Governor's commutation that Cantellops was testifying falsely when he disclaimed any promise. Surely it could have been no surprise to anyone that the witness was later shown some consideration; the jury knew that Cantellops hoped for such a result and that the jury gave this due weight can hardly be doubted in the light of the cross-examination on this subject and the arguments made by defense counsel in their summations."

The State Court rendered a written opinion carefully and fully considering all of the evidence and concluded that Funicello had not committed perjury.

That opinion was affirmed all the way through the New York Court of Appeals and certiorari was denied by the Supreme Court of the United States. People v. Brabson, N.Y.L.J., May 18, 1953, affirmed 1st Dept., 282 App.Div. 935, 125 N.Y.S.2d 650, 1954, 308 N.Y. 694, 124 N.E.2d 324, certiorari denied, 1955, 349 U.S. 941, 75 S.Ct. 787, 99 L.Ed. 1268.

■ The knowing use of perjury by State prosecutors clearly constitutes a denial of due process. Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791. This extends to the knowing use of false testimony that a witness had not been promised favorable treatment. Napue v. People of State of Illinois, supra.

■ The issue of Funicello's credibility was first resolved in favor of his reliability by the trial jury. The coram nobis hearings opened up an exhaustive re-examination of the historical facts in the light of the subsequent fact that Funicello's sentence had been commuted after he testified for the people on petitioner's trial. The issues now raised were conclusively determined by the State Court by a process which afforded petitioner the fullest opportunity to prove the allegations. Barring any "vital flaw" in the State process used to ascertain the basic facts, this Court on a petition for habeas corpus may accept the State determination of the same issue and deny the application without a repetitious hearing. Brown v. Allen, 1953, 344 U.S. 443, 463, 73 S.Ct. 397, 97 L.Ed. 469.

■ It is, however, the function of this Court to determine any question of law or the legal significance of the facts as determined by the State Court. The evidentiary facts established on the trial and in the coram nobis proceeding show conclusively that the instant charge is without foundation. Those evidentiary facts fail to justify petitioner's allegation that perjury was commited, and *a fortiori* that the prosecution knowingly

---

4. Stenographer's Minutes, p. 472.

used perjured testimony. Petitioner was given and availed himself of an adequate opportunity to prove his contentions. Accepting the State Court's determination of the factual issues, there is no basis for finding that the State Court denied due process to petitioner. Accordingly, this petition is denied and the writ dismissed. So ordered.