**UNITED STATES of America,**

v.

**Donald PAYDEN, Eugene Coleman and Anthony Grant, Defendants.**

**No. SS 84 Cr. 566 (DNE).**

United States District Court, S.D. New York.

Nov. 26, 1985.

---

Rudolph W. Giuliani, U.S. Atty., New York City (John K. Carroll, Asst. U.S. Atty., New York City, of counsel), for plaintiff.

Robert L. Herbst, New York City, for defendant Anthony Grant.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This opinion is the sixth relating to this case. The background facts may be read in the other opinions.[1] Familiarity with them is assumed.

At a robing room conference during the trial of this case, defendant Anthony Grant's attorney, Robert Herbst, stated that the government was about to introduce evidence against his client that constituted inadmissible hearsay and moved to exclude the evidence. (Tr. at 1641–42).[2] The court requested the government to present an offer of proof regarding this testimony. (Tr. 1704). Assistant United States Attorney John Carroll did so and the government and Mr. Grant both submitted memoranda on this issue. This procedure was followed to avoid any possible prejudice to Mr. Grant's co-defendants that would arise if the court admitted the evidence subject to connection with the conspiracy charged in the indictment, and later determined that the evidence was either totally inadmissible or admissible only as to Grant.

The court finds that the evidence consisting of statements by Grant and a third party is admissible as to defendant Grant. This evidence is not admissible as to the other defendants, Donald Payden (a/k/a "Country") and Eugene Coleman. Under these circumstances, a jury instruction is not sufficient to protect the interests of Payden and Coleman. Accordingly, the government is precluded from offering this evidence.

## BACKGROUND

Viewing the facts in the light most favorable to the government, the offer of proof presented by the government consists of the following information. This information is contained in two DEA form Sixes (exhibits 3502 EE and 3503 B) as well as the government's memoranda and offer of proof. The "Sixes" were prepared by Special Agent Marvin Siegel, the case agent for the investigation and the officer personally involved in the incident with Grant and Special Agent Beatrice Leone who accompanied Siegel during the July 19, 1985 incident. The government would seek to introduce these facts through Special Agent Siegel and Special Agent Leone.

On July 19, 1984 at approximately 8:45 p.m., Special Agents Marvin Siegel and Beatrice Leone, while parked in the vicinity of 158th Street and Amsterdam Avenue, were approached by Anthony Grant. Grant offered to sell Siegel a variety of narcotics but Siegel initially rebuffed him stating that he did not believe that Grant would be able to sell him the quantity of heroin that he wished to purchase. Grant, disclaiming that he should not be telling Siegel this, then identified a location on Amsterdam Avenue as "Country's," and stated that all the heroin in the area was "Country's," and that "Country" could supply all the heroin Siegel needed. At that time Siegel observed Donald Payden [a/k/a "Country"] standing in front of the location Grant had pointed out.

Siegel then broke off his conversation with Grant, drove away, and returned approximately ten minutes later. At that time, Grant entered Siegel's automo-

---

1. *United States v. Payden,* 620 F.Supp. 1426 (S.D.N.Y.1985) (Opinion and Order); *United States v. Payden,* 613 F.Supp. 800 (S.D.N.Y.1985); *United States v. Payden,* 609 F.Supp. 1273 (S.D.N.Y.), *aff'd,* 768 F.2d 487 (2d Cir.1985); *in re Grand Jury Subpoena Dated Jan. 2, 1985 (Simels),* 605 F.Supp. 839 (S.D.N.Y.), *rev'd,* 767 F.2d 26 (2d Cir.1985); *United States v. Payden,* 598 F.Supp. 1388 (S.D.N.Y.1984), *rev'd,* 759 F.2d 202 (2d Cir.1985).

2. Defendants Donald Payden and Eugene Coleman have joined in the motion.

bile and they discussed a narcotics transaction. Siegel reported to Grant that he would be interested in doing business if Grant could get heroin from Country. Grant replied that his brother worked for Country and could supply all the heroin Siegel wanted; Grant also fixed a price of $35.00 per quarter.

Shortly thereafter, Siegel drove his automobile back to the vicinity of 158th Street and Amsterdam Avenue. Grant got out of Siegel's automobile and walked to an individual he later identified as "Eric." After a brief moment, Grant returned to Siegel's vehicle and told Siegel that Eric worked for Country and had heroin available for sale. Eric then briefly joined Grant at Siegel's vehicle and first asked Grant if Siegel was going to do the deal and then directed Grant to "do the transaction." Eric then rode away from the car on his bicycle.

Finally Siegel told Grant that he was reluctant to do the deal at that time but that he would return in the future. Grant gave Siegel a slip of paper with the phone number where he could be reached and Siegel departed.

Memorandum in Support of the Admission of Certain Evidence Relating to Incidents Occurring on July 19, 1984 at 2–3.

## DISCUSSION

### I. *Admissibility of Evidence*

The court must determine whether the evidence is admissible and, if so, against whom. Each of the statements must be examined independently with respect to the individual defendants.

### A. Statements by Eric

Eric, the individual that Grant talked with after meeting with Siegel and who later approached Siegel's automobile, made statements regarding the alleged deal between Grant and Siegel. Eric asked Grant whether Siegel was going to do the deal. After Grant nodded in the affirmative, Eric said "you do the transaction."

█ The statements are not hearsay. Rather, they constitute verbal acts which are not being introduced for the truth of the matter stated. *See United States v. Alvarez-Porras*, 643 F.2d 54, 58 (2d Cir.), cert. denied, 454 U.S. 839, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981). The statements are therefore admissible against all of the defendants. The mere fact that these statements were made is evidence that Grant and Eric were involved in the same conspiracy. It is not clear from these statements, however, that Eric and Grant are involved in the Payden conspiracy charged in the indictment.

### B. Statements by Grant[3]

Grant is alleged to have made a number of comments regarding Donald Payden. Grant is also alleged to have made a state-

---

**3.** For convenience, Grant's statements, as contained in the DEA, form six, exhibit 3502 EE, are repeated here. Grant stated that he could take Siegel to locations to purchase small quantities of cocaine and heroin and that Grant could get heroin from an individual named "Poindexter." After Siegel indicated that he wanted larger quantities, Grant indicated that there were two other locations where he could get larger quantities. When Siegel stated that he wanted more than one package of this larger quantity, Grant pointed to Kenny's and stated that it was a number's place. Grant then stated that the place was "Country's" and that "Country" was standing in front of it. Grant also stated that all of the heroin in the area was Country's and that Country could supply whatever Siegel needed. Siegel observed Payden in front of Kenny's. Siegel then left the area. Ten minutes later, Siegel returned to speak to Grant. Grant entered Siegel's car to discuss a possible deal while they drove around the neighborhood. Siegel stated that he would like to get heroin from Country. Grant then said that his brother worked for Country.

Grant spoke to a person identified as Eric, and then approached the automobile. Grant stated that Eric worked for Payden and had the heroin Siegel wanted. Eric then approached the car and asked if the deal was going to go through. Grant replied in the affirmative and Eric told Grant to do the deal. Eric rode a short distance on his bicycle then stopped and waited. Siegel then informed Grant that he did not wish to do the deal at that time. Grant then gave Siegel a slip of paper with his phone number to allow Siegel to contact him to purchase heroin in the future.

ment that would tend to connect Grant to the alleged Payden-Coleman conspiracy.

### 1. Admissibility as to Grant.

■ Grant's own statements may be introduced against him as admissions. Fed.R.Evid. 801(d)(2)(A). These admissions may be used against Grant to connect him with the Payden conspiracy. *E.g., United States v. Terry*, 702 F.2d 299, 320 (2d Cir.), *cert. denied*, 464 U.S. 992, 104 S.Ct. 482, 78 L.Ed.2d 680, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983); *United States v. Archbold-Newball*, 554 F.2d 665, 676–77 (5th Cir.), *cert. denied*, 434 U.S. 1000, 98 S.Ct. 644, 54 L.Ed.2d 496 (1977). Grant states that Eric works for Payden, and it is apparent from his statements and actions that he is working with Eric. Accordingly, as to Grant there is sufficient evidence to connect him to the Payden conspiracy.

### 2. Admissibility as to Payden and Coleman.

■ Simply because the statements are admissible as to Grant, the statements are not automatically admissible against Payden and Coleman because Rule 801(d)(2)(A) provides for the use of admissions only against the party making the statement. The court must determine the admissibility against Payden and Coleman as if they were being tried separately. *See United States v. Archbold-Newball*, 554 F.2d at 677. These statements may not be considered as evidence against Payden or Coleman unless they fall within the coconspirator exception embodied in Rule 801(d)(2)(E) or some other hearsay exception applicable to these codefendants. *United States v. Lyles*, 593 F.2d 182, 194 (2d Cir.), *cert. denied*, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *United States v. Eubanks*, 591 F.2d 513, 519 (9th Cir.1979) (per curiam); *White v. United States*, 394 F.2d 49 (9th Cir.1968); *see also People v. Payne*, 35 N.Y.2d 22, 27–28, 358 N.Y.S.2d 701, 315 N.E.2d 762 (1974) (admission received into

**4.** Without this requirement of independent non-hearsay corroboration, coconspirator hearsay "would lift itself by its own bootstraps to the

evidence against declarant at his own trial not admissible as to coconspirator).

■ Under Rule 801(d)(2)(E), before a jury may consider out of court statements by a third party against a defendant, this court must be satisfied by a fair preponderance of the independent *non-hearsay* evidence that the defendant and the third-party declarant were in fact members of the same conspiracy, *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir.1969), *cert. denied*, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970); *see United States v. Cicale*, 691 F.2d 95, 103–04 (2d Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1771, 76 L.Ed.2d 344 (1983), and that this conspiracy is the conspiracy charged in the indictment, *see United States v. Cambindo Valencia*, 609 F.2d 603, 636 n. 25 (2d Cir. 1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980).[4] In order to be considered against Payden and Coleman, the court must therefore find by a fair preponderance of the independent, non-hearsay evidence that Grant is a member of the Payden-Coleman conspiracy.

The first question is to determine what is the non-hearsay evidence connecting Grant to the Payden-Coleman conspiracy. The totality of the evidence connecting Grant to the Payden-Coleman conspiracy consists of testimony of Claudine Jones and the proffered testimony of DEA agents. Claudine Jones testified that she cut-up Payden's heroin into $25 and $50 bags. The agents would testify as to the events described in the DEA form Six. Specifically:

—Grant stated that all of the heroin sold in the area was Country's and that Payden was standing in front of Kenny's, a store on the block;

—Grant offered to sell "quarters," "spoons" and "half-spoons" to Siegel;

—Grant told Special Agent Siegel that Eric and Grant's brother worked for Country;

level of competent evidence." *Glasser v. United States*, 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

—Grant and Eric walked towards the automobile from the location where Payden was standing; and

—Eric then told Grant to do the transaction with Siegel.

The Government's contention is that based on this evidence, Grant was a member of the Payden conspiracy. Not all of this evidence, however, is admissible, specifically Grant's statement that Eric and Grant's brother work for Country, and the statement that all of the heroin sold in the area was Country's.

■ If admissible under another exception to the hearsay rule, these statements could be used in making the *Geaney* finding with respect to Payden and Coleman. *United States v. Cambindo Valencia,* 609 F.2d at 635 n. 24. Grant's statements, although admissions as to him, are not admissible under 801(d)(2)(A) as to Payden and Coleman. Further, there are no other exceptions to the hearsay rule which would allow these statements to be admitted against them.[5] The only possible exception that could apply is the statement against interest exception, Fed.R.Evid. 804(b)(3). Since Grant's statement inculpates Payden and Coleman, in order to be admissible under Rule 804(b)(3), the government must show "(1) that the declarant is 'unavailable' as a witness," (2) that the statement is sufficiently reliable to warrant an inference that "a reasonable man in [the declarant's] position would not have made the statements unless he believed it to be true," and (3) that "coroborating circumstances clearly indicate the trustworthiness of the statement." *United States v. Katsougrakis,* 715 F.2d 769, 775 (2d Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) (citations omitted); *accord United States v. Alvarez,* 584 F.2d 694, 699 (5th Cir.1978). Assuming *arguendo* that Grant is "unavailable," Grant's statements that Eric works for Country and that all of the heroin sold in the area is Country's clearly do not satisfy elements (2) or (3).

■ An examination of the entire transaction reveals that there are a number of statements made by Grant relating to his attempt to consummate a sale with Siegel that would tend to subject Grant to criminal liability. Those statements offering to sell narcotics which do not inculpate Payden and Coleman would be admissible, if relevant, against Payden and Coleman under 804(b)(3) and would not be subject to the three part test noted above.[6]

The specific statements that link Grant and Eric to Payden, including Grant pointing to Kenny's, however, do not fall within this exception. Although stated in the context of a narcotics transaction, it cannot be said that a reasonable man would not have made these statements unless he believed them to be true. Further, these specific statements are not against Grant's interest, rather, they affect Eric and Payden. Thus, the statements that link Eric to Payden do not satisfy the second element of the test.

With respect to the third element, there are few corroborating circumstances that would indicate the trustworthiness of these statements. In fact, the facts surrounding these statements indicate that the statements are unreliable. According to the DEA form six describing the Grant meeting, Grant approached the vehicle to inquire whether Siegel wanted to buy drugs. Siegel said that he was not interested in talking with Grant. Grant then stated that if Siegel wanted cocaine, he would take

**5.** The finding that no other exception would allow these statements as to Payden and Coleman for *Geaney* purposes would also preclude use of these statements against them to prove Grant's participation as an element of the conspiracy. There is other evidence linking Payden and Coleman in a conspiracy so that the conspiracy charge as to them does not fall based on this exclusion.

**6.** When Grant's statements linking Eric to Payden are excluded, the relevance of the remaining statements is questionable. Although the remaining evidence does establish a Grant-Eric conspiracy, the failure to link them to the Payden conspiracy makes all of their remaining statements irrelevant to the charges contained in the indictment.

Siegel to an apartment on West 158th Street, but if he wanted heroin, he would take Siegel to an individual named Poindexter. Siegel again stated that he was not interested in doing business with someone he did not know. After Grant tried persuading Siegel further, Siegel responded that Grant could not supply the quantity that Siegel wanted. Grant then responded that all the heroin in the area was Country's and that Country could supply whatever the agents needed. Siegel then appeared interested. Grant, persisted in his efforts to make a sale, then made the only statement that would link him to the Payden-Coleman conspiracy—that Eric worked for Payden. At that point Eric approached the car. In this context, the reliability of this statement is insufficient.

Apparently to corroborate Grant's statements made during the July 19th meeting, the government has submitted a second DEA form Six relating to a meeting between Siegel and an individual identified as P.J. (Exhibit 3503 B). Siegel asked P.J. if he knew Grant or Eric. P.J. stated that he did. P.J. noted that Grant and Eric were not in the area but Grant had told him to take care of Siegel. Siegel then stated that he would buy heroin from anyone as long as it was Country's. P.J. then stated that he would get someone to help them. P.J. later met with Siegel stating that he could not locate Grant or anyone else to get what Siegel wanted. This incident does not have adequate indicia of reliability to corroborate the prior meeting.

In sum, Grant's statements regarding Eric's connection to Country have not been corroborated by circumstances "clearly indicat[ing] their trustworthiness." *Katsougrakis*, 715 F.2d at 775. The Government has proffered little independent evidence that Eric and Country had any dealings with respect to the narcotics Grant was offering.

 Accordingly, Grant's statements that all the heroin in the area was Country's and that Eric and Grant's brother worked for Country cannot be considered in making the *Geaney* finding as to Payden

and Coleman. Furthermore, the remaining evidence relating to the size of the packages Grant was offering for sale, that Grant identified Payden, and that Grant walked from the location where Payden was standing is insufficient to establish the link between Grant and the Payden conspiracy. *See United States v. Garcia-Duarte*, 718 F.2d 42, 46 (2d Cir.1983) (cocaine dealer's customer book containing name of defendant along with finding cocaine in defendant's home as well as magazine in defendant's home addressed to dealer is not sufficient to establish link between the defendant and the dealer); *United States v. Harshaw*, 705 F.2d 317, 320–22 (8th Cir. 1983) (evidence that drug dealer met with defendant immediately prior to the detective's drug buy from the defendant and that defendant was in a building visited by drug dealer twice during the course of another cocaine buy did not satisfy *Geaney* type standard and thus district court was not clearly erroneous in declaring a mistrial); *United States v. Steinberg*, 525 F.2d 1126, 1134 (2d Cir.1975) (overwhelming evidence that Steinberg participated in large scale narcotics conspiracy along with evidence that alleged co-conspirator engaged in narcotics transactions at Steinberg's apartment was not enough to link Steinberg to his alleged co-conspirator for purposes of 801(d)(2)(E)), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *see also United States v. Terry*, 702 F.2d at 320–21; *United States v. Burgos*, 579 F.2d 747, 749 (2d Cir.1978); *United States v. Littrell*, 574 F.2d 828 (5th Cir.1978); *United States v. Cirillo*, 499 F.2d 872, 884–87 (2d Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974). The fact that Grant offered heroin in small sized packages, a size that Claudine Jones stated were sold through her workers does not link Grant and Eric to Payden. These size packages were certainly not unique to heroin originating from Payden. Further, the effect of Grant identifying Payden only indicates that Grant knew who Payden was. Finally, that Grant came from Payden's location is insufficient. Thus, viewed in a light most favorable to the government

and "not in isolation but in conjunction," *Geaney*, 417 F.2d at 1121, the independent non-hearsay evidence clearly does not show by a preponderance of the evidence that Grant is a conconspirator of Payden and Coleman.

## II. Bruton *Problem*

■ Given the admissibility of Grant's statement as to him and the inadmissibility of these same statements as to Payden and Coleman, a thorny problem is presented. Under circumstances such as these, a jury instruction to limit the application of the statement is not sufficient to protect the rights of Payden and Coleman. *Bruton v. United States*, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *see United States v. Gonzalez*, 555 F.2d 308, 316 (2d Cir.1977) (*"Bruton* was the culmination of a long debate among eminent jurists of the efficacy of cautionary instructions when the jury is permitted to hear a statement that is hearsay and inculpatory of a codefendant, without benefit of cross-examination, which all agree it should not use as a factor in judgment"). The simple logic of this is apparent. Given the circumstances of this case, if the statements were to be admitted, the jury would be instructed that they can consider Grant's statements (admissions) against him to prove that he was a coconspirator of Payden but that it could not consider Grant's statements against Payden to prove that Payden was a coconspirator of Grant—an absurd result when considering that the essence of a conspiracy is an "agreement" to do an unlawful act.

Under these circumstances the government cannot introduce Grant's statements. *See United States v. Glover*, 506 F.2d 291 (2d Cir.1974) (proper course is to prohibit introduction of statements, rather than sever and declare a mistrial). The court is aware of the consequences of this decision and is wary to release a defendant who has been involved in a narcotics transaction. The government should have used more foresight. It should have either brought

Mr. Grant to trial on a separate indictment or sought a severance prior to the commencement of trial.

## III. *Rule 29 Motion*

■ There is a heavy burden on a defendant to succeed on a Rule 29 motion. As the Second Circuit has noted:

[I]n passing upon a motion for directed verdict of acquittal, [a trial judge] must determine whether upon the evidence, giving full to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon te evidence there must be such a doubt in a reasonable mind, he must grant the motion; or to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt is fairly possible, he must let the jury decide the matter.

*United States v. Artuso*, 618 F.2d 192, 195 (2d Cir.), *cert. denied*, 449 U.S. 861, 879, 101 S.Ct. 164, 226, 66 L.Ed.2d 77, 102 (1980). Given the finding above relating to the admissibility of Grant's statements to Payden and Coleman under *Geaney*, however, it follows that unless additional evidence is introduced, Grant's Rule 29 motion must be granted. As the Second Circuit has noted: "The standard for independent proof of participation is 'lower then the standard of evidence sufficient to submit a charge of conspiracy to a jury.'" *United States v. Cicale*, 691 F.2d at 103 (quoting *United States v. Alvarez-Porras*, 643 F.2d 54, 57 (2d Cir.), *cert. denied*, 454 U.S. 839, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981)); *accord United States v. Garcia-Duarte*, 718 F.2d at 45. Since Rule 29 provides for "the entry of judgment of acquittal ... after the evidence on either side is closed," the determination of the Rule 29 motion is premature. The court, therefore, reserves on

this motion until the close of the government's case.[7]

## CONCLUSION

Defendants' motion to exclude evidence is granted. The court reserves decision on defendant Grant's Rule 29 motion until the close of the government's case.

SO ORDERED.

---

**7.** The arguments raised by Mr. Grant based on the "single act" doctrine and the "mere facilitation" doctrine are unpersuasive. It is clear that Mr. Grant was doing more than introducing a willing buyer to a willing seller: he was attempting to consummate a sale. *See United States v. Purin,* 486 F.2d 1363, 1369 (2d Cir. 1973), *cert. .denied,* 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974). Further, the fact that Grant's alleged participation in the conspiracy is limited to a single act does not preclude a finding that Grant was a member of the conspiracy. *United States v. Ramirez,* 482 F.2d 807, 816 (2d Cir.), *cert. denied,* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973). Based on the information contained in the DEA forms, testimony would be given that would tend to establish that Mr. Grant was attempting to sell narcotics. Based upon the evidence which the court is permitting to be introduced at trial, however, the court finds that the government has not established by a fair preponderance of the independent non-hearsay evidence that Donald Payden was the source of these narcotics, the charge in the Indictment.